843 So.2d 488 (2003)
STATE of Louisiana
v.
Kenneth HALL.
No. 2002-KA-1098.
Court of Appeal of Louisiana, Fourth Circuit.
March 19, 2003.
*491 Harry F. Connick, District Attorney, Julie C. Tizzard, Assistant District Attorney, New Orleans, LA, for State of Louisiana.
Arcenious F. Armond, Jr., Gretna, LA, for Kenneth Hall.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, and Judge DAVID S. GORBATY).
CHARLES R. JONES, Judge.
Kenneth Hall appeals his convictions for distribution of heroin within one thousand feet of a schoolyard, and possession of more than twenty eight grams but less than two hundred grams of cocaine. On the former conviction, he was sentenced to life imprisonment. On the latter conviction, he was sentenced to ten years imprisonment without benefits. This appeal follows.

Procedural History
Hall was indicted by the grand jury for possession with intent to distribute heroin within one thousand feet of a schoolyard, in violation of La. R.S. 40:981.3, and possession of more than twenty-eight grams but less than two hundred grams of cocaine, *492 in violation of La. R.S. 40:967.[1] After the district court denied his motion to suppress evidence and he elected a bench trial, the court rendered its verdict finding Hall guilty as charged on both counts The district court denied Hall's motion for new trial and motion for post judgment verdict of acquittal, and imposed sentence. Hall was sentenced to life imprisonment at hard labor without the benefit of probation or suspension of sentence on the heroin charge, and to ten years at hard labor without benefit of probation, parole, or suspension of sentence on the cocaine charge. Hall orally objected to the sentence and moved for an appeal. A written motion for appeal was filed.

Facts
On November 11, 1996, Officer Sanford Johnson was conducting surveillance in the area of 2100 Whitney Avenue. The officer was undercover, observing narcotics trafficking in the Fischer Housing Development. Officer Johnson testified that he observed numerous hand to hand transactions that day. He testified that he observed Kenneth Hall walk up to where the traffickers were standing. Hall spoke with a few of the subjects and then walked into an apartment. Hall later called a few of the subjects located outside the apartment to come inside. The subjects went into the apartment and exited a short time later. The officer also observed an elderly man approach the group. The man told the subjects that they were ruining the neighborhood. Approximately thirty minutes later, Hall left the area. During the surveillance, the officer observed Hall engage in hand-to hand transactions with persons in vehicles who would stop at the intersection.
Officer Johnson testified that a second surveillance was conducted on November 13, 1996. On that day, the officer observed Euric Vincent and Terrell Jones looking up and down the street as if they were waiting for someone. Approximately forty-five minutes later, a white vehicle drove up. Hall exited the vehicle and approached Vincent and Jones. Hall gave Vincent a brown paper bag and then left the area. Vincent and Jones took some items out of the bag and put the objects in their pockets. They placed the bag in a support pipe in the building at 2100 Whitney Avenue. The officer then observed Vincent and Jones engage in narcotics transactions. After a few hours, a vehicle approached Vincent and Jones. The officer heard Vincent say "I'm about to go get that man, because ain't nobody going to be selling no drugs here but us." After leaving the area on foot, Vincent returned in a vehicle. When he exited the vehicle, the officer saw that Vincent had a gun in his hand. Vincent then placed the gun in the trunk. Once he returned to where Jones was standing, he continued the hand to hand transactions. When the trafficking stopped, and the officer realized that Hall would not be returning, the officer ended surveillance for the day. Officer Johnson called for a takedown unit to surround the area.
*493 Officer William Marks, who assisted with the surveillance on November 11, 1996, testified and corroborated the testimony of Officer Johnson.
Officer Marcel Foxworth testified that he assisted in the surveillance of the 2100 block of Whitney Avenue on November 13, 1996. The Officer also corroborated the testimony of Officer Johnson. Officer Foxworth further testified that after observing the transactions of the subjects, the officers believed the situation to be dangerous when Vincent left the area and returned with a gun. The officers decided to arrest Vincent and Jones, and radioed for assistance. Officer Foxworth testified that he retrieved the paper bag from the support pipe and found thirty-eight packets of heroin in the bag. A handgun with thirteen rounds and a glass tube with white residue were found in Vincent's vehicle. Two hundred ten dollars were found on Vincent.
Officer Marks further testified that he assisted in the surveillance of Hall on the afternoon of November 15, 1996. He testified that he followed a van being driven by Dorothy Hartford into the Trace Apartment Complex, where she got out of the driver's side of the vehicle and Hall exited from the rear. Hall and Hartford walked to an upstairs apartment, and then left with another woman, Erica Ware. Hall carried a bag from the apartment and all three drove off in the van. Sergeant Joel Poretto testified that he conducted an investigative stop of the van on General De Gaulle, believing that Hall was returning to the Fischer Housing Development with more narcotics.
Officer Marks further testified that he was parked at the intersection of De Gaulle and Whitney while the stop by Sergeant Poretto was being conducted. Officer Marks testified that he heard Sergeant Poretto request assistance over the radio and saw the blue van going down General De Gaulle at a high rate of speed. The van turned onto Whitney and drove across a driveway into a grassy area where children were playing. Officer Marks pursued the vehicle and saw it stop. Dorothy Hartford jumped out of the vehicle with a bag and started to run. After being ordered to stop by the officer, Hartford complied and was placed under arrest. The officer advised Hartford of her rights, which she indicated that she understood. At that time, the officer asked Hartford about the bag. Hartford stated that the bag contained drugs and money, which she claimed belonged to Hall. The officer opened the bag and found one hundred and seventeen grams of cocaine and eighty-three hundred dollars in cash in the bag. When Hall exited the van, Sergeant Poretto testified that he observed a bag of marijuana on the floor of the vehicle. Hall was then placed under arrest.

Errors Patent
A review of the record reveals errors in the sentences imposed by the district court on Hall for his conviction for possession with the intent to distribute heroin within one thousand feet of a schoolyard. The district court sentenced Hall to life imprisonment at hard labor without benefit of probation or suspension of sentence. However, La. R.S. 40:966 and La. R.S. 40:981.3 also provide that the sentence is to be served without the benefit of parole, and requires the imposition of a fine of $50,000. La. R.S. 40:967, which provides for possession of more than twenty-eight grams, but less than two hundred grams of cocaine also mandates the imposition of a fine between $50,000 and $150,000. The district court failed to impose fines in conjunction with both sentences. Therefore, the sentences are illegally lenient. Heretofore, this Court has followed the dictates of State v. Fraser, *494 484 So.2d 122 (La.1986), which held that a sentencing error favorable to the defendant that is not raised by the State on appeal may not be corrected. However, the legislature recently enacted La. R.S. 15:301.1[2], which addresses those instances wherein sentences contain statutory restrictions on parole, probation or suspension of sentence. Paragraph A of La. R.S. 15:301.1 provides that in instances where the statutory restrictions are not recited at sentencing, they are contained in the sentence, whether or not imposed by the sentencing court. Moreover, in State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, the Supreme Court found that paragraph A self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence, which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute. Hence, this Court need take no action to correct the district court's failure to specify that Hall's sentence be served without benefit of parole, and the imposition of the mandatory fine of $50,000. The correction is statutorily effected.[3] La. R.S. 15:301.1A.
However, as La. R.S. 40:967 provides a range of fines to be imposed, the matter must be remanded for the imposition of the fine on the cocaine charge.

ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, Hall contends that the district court erred by denying him the right to equal protection of the laws as guaranteed by the Fourteenth Amendment of the United States Constitution through the systematic exclusion of African-Americans from serving as grand jury forepersons. However, such an argument must first be presented in a motion to quash the indictment on that basis, or it is waived. State v. Woodberry, XXXX-XXXX (La.App. 4 Cir. 6/5/02), 820 So.2d 638; State v. Juarbe, 2001-2250 (La.App. 4 Cir. 7/31/02), 824 So.2d 1240. Hall did not file a motion to quash and is, therefore, precluded from raising this issue on appeal. Deloch v. Whitley, 96-1901 *495 (La.11/22/96), 684 So.2d 349; State v. Brooks, 98-0693 (La.App. 4 Cir. 7/21/99), 758 So.2d 814.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 2
Hall further argues that his counsel was ineffective for failing to file a motion to quash the bill of indictment.
A party claiming ineffective assistance of counsel must show that 1) the counsel's performance was deficient and 2) the client was prejudiced by the deficiency. State v. Jackson, 97-2220 p. 8 (La.App. 4 Cir.5/12/99), 733 So.2d 736, 741; Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4 Cir. 1986). Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court, where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4 Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986).
The appellate record fails to demonstrate that Hall was prejudiced by the actions of his trial counsel, and, therefore, lacks sufficient evidence for adequate review by this Court. However, he may raise this claim in an application for post conviction relief wherein an evidentiary hearing can be held on the issue.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 3
Hall also contends that the life sentence imposed by the district court is excessive because it does not provide for a determinate period of time to be served before Hall would be eligible for parole. However, Hall fails to recognize that the life sentence for the heroin charge is to be served without the benefit of parole. See La. R.S. 40:966 and La. R.S. 40:981.3. While the district court failed to state that the sentence was to be served without parole, the sentence is automatically corrected to provide that the sentence is to be served without parole. See Williams, 800 So.2d at 799. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 4
Hall maintains that the district court erred when it allowed the State to introduce inflammatory and irrelevant hearsay evidence. Specifically, Hall contends that the district court should not have allowed Officer Marks to testify about the statement made by Dorothy Hartford concerning the ownership of the drugs and money in the bag. He also argues that the district court erred in allowing the State to introduce the items found in Vincent's vehicle.
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Relevant evidence is generally admissible. La. C.E. art. 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, *496 confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.
A trial court's ruling as to relevancy will not be disturbed absent a clear abuse of discretion. State v. Lewis, 97-2854 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004; State v. Badon, 95-0452 (La.App. 4 Cir. 11/16/95), 664 So.2d 1291. A trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect. See State v. Lambert, 98-0730 (La.App. 4 Cir. 11/17/99), 749 So.2d 739; State v. Brooks, 98-0693 (La.App. 4 Cir. 7/21/99), 758 So.2d 814.
Generally, evidence of other crimes, wrongs or acts is inadmissible, with the exception under La. C.E. article 404(B)(1) for admission of evidence of other crimes "... when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." State v. Burton, 98-0096 pp. 6-7 (La.App. 4 Cir. 9/1/99), 746 So.2d 74, 78-79. Evidence of other crimes is admissible when it is related to and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to it. State v. Parker, 96-1852 (La.App. 4 Cir. 6/18/97), 696 So.2d 599; State v. Brewington, 601 So.2d 656 (La. 1992).
However, evidence may be admissible under La. C.E. art. 404(B) as integral act evidence, that is, evidence so "related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it." Brewington, 601 So.2d at 657. The test for admissibility of integral act evidence is not simply whether the State might somehow structure its case to avoid any mention of the uncharged act or conduct, but whether doing so would deprive its case of narrative momentum and cohesiveness. State v. Colomb, 98-2813 (La.10/1/99), 747 So.2d 1074, 1076. The res gestae doctrine encompasses not only spontaneous utterances and declarations made before and after commission of the crime, but also testimony of witnesses regarding what they heard or observed before, during, or after the commission of the crime if a continous chain of events is evident under the circumstances. Id.
In Colomb, police arrested defendant after seeing him standing at the open door of his vanstopped in the middle of the street in area known for drug trafficking with five or six known drug traffickers gathered around him. Defendant was arrested for possession of a firearm by a convicted felon and possession of marijuana. At his trial on the firearm charge, officers testified that after they found the firearm on the floorboard of the van, defendant lifted up his shirt to reveal a bag of marijuana, which he admitted belonged to him. The appellate court reversed defendant's conviction, holding that evidence of the marijuana, found after the discovery of the gun, did not relate to conduct forming an integral part of the firearm offense, i.e., the res gestae. The appellate court further stated that even if the defendant's drug possession constituted part of the res gestae, it could discern no relevant reason, other than prejudice, for its admission into evidence. The Louisiana Supreme Court subsequently reversed the appellate court, holding that the evidence of defendant's marijuana possession contemporaneous with the discovery of the firearm in his van "provided not only narrative completeness to a case which began as a narcotics stop but also formed an integral part of the context facts in which jurors evaluated the state's case for defendant's exercise of dominion *497 and control over the weapon." 98-2813 at p. 4, 747 So.2d at 1076. The court found the undisputed evidence of the defendant's marijuana possession in a high crime area was highly probative in that it was fully consistent with the officers' disputed testimony that the defendant had admitted that he possessed his wife's gun for protection. The court held that, given the high probative value of the drug possession evidence, it did not need to decide whether integral act evidence presented under authority of La. C.E. art. 404(B) must invariably pass the balancing test of La. C.E. art. 403.
In the case at bar, Hall argues that the statement made by Dorothy Hartford to Officer Marks about the ownership of the cocaine should not have been admitted. Hall contends that the statement was inadmissible hearsay. However, the statement was made during the apprehension of Hall and Hartford. Officer Marks testified that he assisted in the apprehension of Hartford. The officer testified that Hartford was carrying the bag he had seen Hall holding earlier that day. After she was apprehended, Hartford told the officer that the bag contained cocaine and money that belonged to Hall. The statement was made during the attempted commission of the crime. Therefore, the district court did not err in admitting the statement.
Hall also suggests that the district court erred when the court allowed the State to introduce the items found in Vincent's vehicle into evidence. The officers testified that Vincent's vehicle was searched after his arrest on the second day of the surveillance. The officers further testified that a gun, ammunition, two beepers and a crack pipe were found in Vincent's vehicle. These items were introduced into evidence at trial. While Hall did not have possession of these items, the search of Vincent's vehicle and the seizure of these items were part of a continuous surveillance of Hall's criminal actions. It can be argued that the items were found during the commission of the crimes with which Hall has been charged and convicted. As such, the items were properly introduced into evidence.
Further, even if the evidence should not have been admitted into evidence, such error was harmless, as the guilty verdicts in this case were unattributable to such error. State v. Castleberry, 98-1388, p. 23 (La.4/13/99), 758 So.2d 749. Officer Marks testified that he saw Hall in possession of the bag that contained the cocaine. Officers Foxworth and Johnson testified that they observed Hall provide Vincent and Jones with the brown paper bag, which was later determined to contain heroin. In addition, Officers Johnson and Marks testified that they observed Hall engage in hand to hand narcotics transactions.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NUMBER 5
Hall further suggests that he was deprived of his right to conflict free representation when his trial counsel continued to represent the co-defendants despite his acknowledgment of a conflict, and his ultimate withdrawal of representation of the co-defendants. Hall argues that his trial counsel was ineffective in failing to maintain separate representation of the defendant.
Generally, multiple representation does not violate the Sixth Amendment of the United States Constitution unless it results in a conflict of interest. State v. Kahey, 436 So.2d 475, 484 (La.1983). In State v. Lobato, 621 So.2d 103 (La.App. 2 Cir.1993), the defendant alleged a conflict *498 resulting from his counsel's failure to call his co-defendant as a witness. The court stated that a defendant failing to raise an objection to multiple representation prior to or during trial, "... must establish that an actual conflict of interest adversely affected his counsel's performance in order to establish a claim." However, conflicts of interest must be established by specific instances in the record. Id.; Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
In United States v. Abner, 825 F.2d 835 (5 Cir.1987), in which a defendant claimed that a conflict of interest resulted in his counsel's failure to call a witness, the Fifth Circuit stated that a defendant must specifically name the testimony denied to the jury and how it negatively impacted the defendant. In a similar case citing Lobato, this Court held that a claim for conflict of interest that is both vague and speculative "is insufficient to impugn a criminal conviction." State v. Holmes, XXXX-XXXX (La. App. 4 Cir. 11/8/00), 791 So.2d 669.
In the instant case, Donald Pinkston represented Hall at the trial level. The record indicates that Mr. Pinkston initially represented Hall and his three co-defendants. When Mr. Pinkston acknowledged the possibility of a conflict between Hall and the co-defendants, he informed the district court that he would continue to represent Hall, and withdraw from his representation of the co-defendants. Michael Milton then indicated that he would represent Jones and Vincent. Anderson Council informed the district court that he would represent Hartford. Hall further argues that Mr. Milton and Mr. Council are either associates or partners with Mr. Pinkston. In spite of this argument, the record does not reflect a relationship, and only indicates that Pinkston represented the co-defendants when their counsel did not appear for hearings or status conferences. The record does not indicate whether Mr. Pinkston was making an appearance on behalf of the other attorneys, or was in fact representing the co-defendants himself.
Hall also contends that in the event that his trial counsel had not represented the co-defendants, Vincent and Jones, they would have been more willing to testify that they did not know Hall nor obtain heroin from him. However, the record is inadequate to determine whether trial counsel failed to maintain separate representation of Hall and/or, whether such failure was prejudicial to Hall.
This assignment of error is best considered in an application for post conviction relief wherein an evidentiary hearing can be held on the issue.

ASSIGNMENT OF ERROR NUMBER 6
Hall also contends that the State failed to produce sufficient evidence to support his convictions for possession of heroin with the intent to distribute within one thousand feet of a schoolyard, and possession of more than twenty-eight but less than two hundred grams of cocaine.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may *499 be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
To support a conviction for possession of a controlled dangerous substance, the State must prove that the defendant knowingly and intentionally possessed the contraband, here cocaine in the amount of at least twenty-eight but less than two hundred grams. La. R.S. 40:967. The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support conviction. See State v. Trahan, 425 So.2d 1222, 1226 (La.1983); see also State v. Cann, 319 So.2d 396, 397 (La.1975). The mere presence of a defendant in the area where the narcotics were found is insufficient to prove constructive possession. See State v. Collins, 584 So.2d 356, 360 (La.App. 4 Cir.1991).
A person not in physical possession of narcotics may have constructive possession when the drugs are under that person's dominion and control. State v. Jackson, 557 So.2d 1034, 1035 (La.App. 4 Cir.1990). A person may be deemed to be in joint possession of a drug that is in the physical possession of another if he willfully and knowingly shares with the other the right to control it. State v. Smith, 257 La. 1109, 245 So.2d 327, 329 (1971). Determination of whether a defendant had constructive possession depends on the circumstances of each case. Cann, 319 So.2d at 397 (La.1975). "In determining whether defendant exercised the requisite dominion and control the jury may consider his knowledge that illegal drugs are in the area, his relationship with one found to be in actual possession, his access to the area where drugs were found, his physical proximity to the drugs and the evidence that the area was frequented by drug users." State v. Reaux, 539 So.2d 105, 108 (La. App. 4 Cir.1989). See also State v. Williams, 594 So.2d 476 (La.App. 4 Cir. 1992); State v. Kingsmill, 514 So.2d 599 (La.App. 4 Cir.1987); State v. Maresco, 495 So.2d 311 (La.App. 4 Cir.1986).
In the case at bar, Officer Marks testified that he observed Hall leave the apartment at Trace Apartment Complex with Hartford and another woman. Hall was carrying a bag. All three entered the van and left the area. Officer Marks testified that Hartford was holding the same bag when he apprehended her several minutes later. The bag contained a substance which appeared to be cocaine and eighty-three hundred dollars in cash.
Hall was also convicted of possession of heroin with intent to distribute within one thousand feet of a schoolyard, which requires that the state prove that he "knowingly" and "intentionally" possessed cocaine with the "intent to distribute". State v. Williams, 594 So.2d 476, 478 (La. App. 4 Cir.1992). Specific intent to distribute may be established by proving circumstances surrounding defendant's possession which give rise to a reasonable inference of intent to distribute. State v. Dickerson, 538 So.2d 1063 (La.App. 4 Cir. 1989). In State v. Hearold, 603 So.2d 731 (La.1992), the Louisiana Supreme Court set forth five factors to consider in determining whether a party had the intent to distribute narcotics. Reversing the defendant's *500 conviction in that case, the court stated:
Intent is a condition of mind, which is usually proved by evidence of circumstances from which intent may be inferred. State v. Fuller, 414 So.2d 306 (La.1982); State v. Phillips, 412 So.2d 1061 (La.1982); La.Rev.Stat. 15:445. In State v. House, 325 So.2d 222 (La.1975), this court discussed certain factors which are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance. These factors include (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
* * *
In the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible. State v. Greenway, 422 So.2d 1146 (La. 1982); State v. Harveston, 389 So.2d 63 (La.1980); State v. Willis, 325 So.2d 227 (La.1975).
Id. at pps. 735-736.
In State v. Cushenberry, 94-1206, p. 6, (La.App. 4 Cir. 1/31/95), 650 So.2d 783, 786, this Court described the Hearold factors as "useful" but held that the evidence need not "fall squarely within the factors enunciated to be sufficient for the jury to find that the requisite intent to distribute." The issue of sufficiency relative to a purchase of narcotics with the alleged assistance of an intermediary was discussed by this Court in State v. Parker, 627 So.2d 210, 212 (La.App. 4 Cir.1993), as follows:
"Distribute" is defined in LSA-R.S. 40:961(13) as "to deliver a controlled dangerous substance ... `Distributor' means a person who delivers a controlled dangerous substance...." "Deliver" is defined in LSA-R.S. 40:961(9) as "... the transfer of a controlled dangerous substance whether or not there exists an agency relationship." In addition, jurisprudence has defined "deliver" as transferring possession or control. State v. Martin, 310 So.2d 544, 546 (La. 1975); State v. Simon, 607 So.2d 793 (La.App. 1st Cir.1992), writ den., 612 So.2d 77 (La.1993).... A defendant may be guilty as a principal in the crime of distribution if he aids and abets in the distribution or indirectly counsels or procures another to distribute the controlled dangerous substance. State v. Parker, 595 So.2d 765 (La.App. 4th Cir. 1992).
La.R.S. 14:24 defines principals as: "[A]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime...." See State v. Brooks, 505 So.2d 714 (La.1987), cert. den. Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Watson, 529 So.2d 94 (La.App. 4th Cir.1988), writ den. 535 So.2d 740 (La.1989). To support a defendant's conviction as a principal, the State must show that the defendant had the requisite mental state for the crime. Brooks; *501 State v. Spotville, 583 So.2d 602 (La. App. 4th Cir.1991), writ den., 585 So.2d 577 (La.1991). Distribution of cocaine requires only general intent, and such intent is established by mere proof of voluntary distribution. State v. Chatman, 599 So.2d 335 (La.App. 1st Cir. 1992).
In the present case, the officers testified that they observed Hall engage in several hand-to-hand transactions. The officers testified that they also observed Hall give Vincent and Jones a brown paper bag. Vincent and Jones took some of the items in the bag and put the items in their pockets. The officers then watched as Vincent and Jones placed the bag in a support pipe in the building at 2100 Whitney Avenue. When the officers retrieved the bag, they found it contained what appeared to be individual packets of heroin.
The State proved that Hall had possession of controlled dangerous substances and had the intent to distribute these substances. Prior to Officer Johnson's testimony on July 1, 1998, the record reflects that stipulations (referred to as State's Exhibit # 1 and # 2) were entered stating that expert members of the NOPD crime lab would testify that the substances in question tested positive for cocaine and heroin. The record also reflects that the amount of cocaine was over 100 grams and was within the prescribed amount of between twenty-eight and two hundred grams. However, the record does not reflect that Hall was within one thousand feet of a schoolyard when distributing heroin. While the state did enter into evidence a map showing Hall's location with respect to the school, no testimony was given stating that Hall was within one thousand feet of a schoolyard. Since the stipulations failed to state Hall's distance from the school, the State did not produce evidence sufficient to support Hall's conviction on the heroin charge.
This assignment has merit.

DECREE
For the reasons stated herein, Kenneth Hall's conviction for possession with the intent to distribute heroin within one thousand feet of a schoolyard is reversed, and the sentence vacated. His conviction for possession of more than twenty-eight grams but less than two hundred grams of cocaine is affirmed, and the matter remanded for the imposition of a fine on the cocaine charge.
REVERSED IN PART; AFFIRMED IN PART; SENTENCE VACATED AND REMANDED.
NOTES
[1] Eric Vincent and Terrell Jones were also named in count one of the indictment charging them with possession with intent to distribute heroin within one thousand feet of a schoolyard. Dorothy Hartford was named in count two charging her with possession of more than twenty-eight grams but less than two hundred grams of cocaine. Vincent and Jones pled guilty to an amended charge of possession of heroin and were sentenced to seven years at hard labor. The sentences were suspended and both were placed on three years active probation. Hartford pled guilty to an amended charge of possession of cocaine and was sentenced to seven years at hard labor. The sentence was suspended and she was placed on three years active probation.
[2] 1999 LA. ACTS 94, effective August 15, 1999, embodied La.R.S. 15:301.1 which provides:

A. When a criminal statute requires that all or a portion of a sentence imposed for a violation of that statute be served without benefit of probation, parole, or suspension of sentence, each sentence which is imposed under the provisions of that statute shall be deemed to contain the provisions relating to the service of that sentence without benefit of probation, parole, or suspension of sentence. The failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.
B. If a sentence is inconsistent with statutory provisions, upon the court's own motion or motion of the district attorney, the sentencing court shall amend the sentence to conform to the applicable statutory provisions. The district attorney shall have standing to seek appellate or supervisory relief for the purpose of amending the sentence as provided in this Section.
C. The provisions of this Section shall apply to each provision of law which requires all or a portion of a criminal sentence to be served without benefit of probation, parole, or suspension of sentence, or of any one of them, any combination thereof, or any substantially similar provision or combination of substantially similar provisions.
D. Any amendment to any criminal sentence as authorized by the provisions of this Section shall be completed within one hundred eighty days of the initial sentencing.
[3] In light of R.S. 15:301.1, this Court will not recognize the sentencing court's failure to impose statutory restriction of benefits as patent error.