**STATE OF LOUISIANA**            *       **NO. 2020-KA-0029**

**VERSUS**                    *

                               **COURT OF APPEAL**

**LEO DORSEY**             *

                               **FOURTH CIRCUIT**

                    *

                               **STATE OF LOUISIANA**

                **\* \* \* \* \* \* \***

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 535-058, SECTION "J"
Honorable Darryl A. Derbigny, Judge
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*

(Court composed of Judge Terri F. Love, Judge Joy Cossich Lobrano, Judge Rosemary Ledet)

*LEDET, J., CONCURS IN PART AND DISSENTS IN PART WITH REASONS*

Leon Cannizzaro
District Attorney
Donna Andrieu
Michael Ambrosia
DISTRICT ATTORNEY'S OFFICE
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

COUNSEL FOR STATE/APPELLEE

Bruce G. Whittaker
LOUISIANA APPELLATE PROJECT
1215 Prytania Street, Suite 332
New Orleans, LA 70130-4357

COUNSEL FOR APPELLANT

> **CONVICTIONS AND SENTENCES FOR SECOND-DEGREE MURDER AND ATTEMPTED SECOND-DEGREE MURDER VACATED; CONVICTION FOR OBSTRUCTION OF JUSTICE AFFIRMED; SENTENCE FOR ILLEGAL POSSESSION OF FIREARM VACATED; REMANDED.**

> **DECEMBER 9, 2020**

*JCL*

*TFL*

The defendant, Leo Dorsey ("Defendant"), appeals his convictions and sentences for the second-degree murder of T.T. ("Decedent"); attempted second-degree murder of S.G. ("Victim"); illegal possession of a firearm; and obstruction of justice. For the reasons that follow, we vacate the convictions and sentences for second-degree murder and attempted second-degree murder; affirm the conviction for obstruction of justice**;** vacate the sentence for illegal possession of firearm; and remand to the district court for further proceedings consistent with this opinion.

Victim testified at trial and established the following: On the evening of January 31, 2017, Decedent, Victim, and Defendant were at Victim's house, discussing a movie they all had previously seen. Decedent and Victim remembered an aspect of the movie in one way while Defendant remembered it another. Victim testified: "The bet was if he was right, he could drive off in my car. If he was wrong, we get his gun or something like that." Decedent and Victim knew that Defendant was in possession of a firearm. The three reviewed the movie and confirmed that the women were correct. Defendant became agitated that he had lost the bet and "started fussing and kept talking about it, kept talking about it."

Victim, frustrated with Defendant's behavior, volunteered to leave her own residence. Victim stated: "Well, you know, I'm about to leave because I don't have time to be going back and forth with you. But he like, "Oh, you don't have to go, I'm gonna leave." Defendant responded that he would leave instead and stood up and stated, "Well, I should shoot y'all for playing with me." Decedent stood up abruptly, and as she approached Defendant, he shot her and Victim and immediately left the residence. Victim called 911 to report the shooting and request emergency medical assistance. Paramedics and police arrived on scene within minutes. The evidence established that police secured the scene and a search yielded two shell casings but no gun was ever recovered.

While Defendant did not testify, he gave a statement to police after his arrest that was entered into evidence at trial. Defendant confirmed that he was at Victim's house, had a firearm with him, but that he left before the homicide. Defendant had difficulty explaining where he was at the time of the shooting. Defendant claimed he was at the house in part to protect Decedent, who was receiving threatening phone calls concerning a stolen car and had received threatening phone calls that evening. Police were unable to confirm Defendant's claim because of the security on the cell phone. However, Victim testified that Decedent neither received any threatening phone calls that night nor was in any trouble with anyone over a car.

## ERRORS PATENT

La. C.Cr.P. art. 920 provides that "[t]he following matters and no others shall be considered on appeal: (1) An error designated in the assignment of errors; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." Notwithstanding the code

2

article and La. C.Cr.P. art. 882, authorizing the correction of an illegal sentence "at any time," under prior Louisiana jurisprudence, reviewing courts would not interfere with the imposition of illegally lenient sentences absent a complaint by the state. *See State v. Fraser*, 484 So.2d 122, 124-25 (La. 1986) (an appellate court should not "notice and correct an undesignated error when the correction is more onerous to the only party seeking review.").

In 1999, however, the legislature enacted La. R.S. 15:301.1. Section B of the statute provides that "[i]f a sentence is inconsistent with the statutory provisions, upon the court's own motion or motion of the district attorney, the sentencing court shall amend the sentence to conform to the applicable statutory provisions."

Whether the statute and subsequent jurisprudence (most notably *State v. Williams*, 00-1725, pp. 8-9 (La. 11/28/01), 800 So.2d 790, 797)) required the court to remand and impose a fine required under the statute was a matter which rendered conflicting jurisprudence by this court until *State v. Williams*, 03-0302, pp. 3-5 (La. App. 4 Cir. 10/6/03), 859 So.2d 751, 753, when it submitted the issue for an en banc vote:

> A review of the record reveals one error patent. The trial court sentenced Mr. Williams under La. R.S. 40:967(F)(1)(b) only to imprisonment. However, La. R.S. 40:967(F)(1)(b) provides that a person convicted of the offense shall be sentenced to imprisonment and shall be fined "not less than one hundred thousand dollars, nor more than three hundred fifty thousand dollars." The State neither objected to the illegally lenient sentence, nor raised the issue on appeal.
>
> The Louisiana Supreme Court has held that an appellate court may correct an illegally lenient sentence by remanding to impose a mandatory fine. *State v. Decrevel,* 2003-0259 (La. 5/16/03), 847 So.2d 1197. However, it did not say that an appellate court is required to do so. In *State v. Comena*, 2002-1562, p. 4 (La. App. 4 Cir. 3/19/03), 843 So.2d 464, 467, and in *State v. Major,* 2002-0133, p. 7 (La. App. 4 Cir. 10/2/02), 829 So.2d 625, 631, we declined to do so. However, a contrary holding was rendered right before Major, supra,

3

was decided in *State v. Legett,* 2002-0153 (La. App. 4 Cir. 5/22/02), 819 So.2d 1104. In *Legett,* we held that the failure to impose the mandatory fine under La. R.S. 40:967 required we remand the matter for the imposition of that fine. Similarly, in *State v. Hall,* 2002-1098, pp. 5-6 (La. App. 4 Cir. 3/19/03), 843 So.2d 488, 494, we held that "the matter must be remanded for the imposition of the fine." *Id.*

To resolve this conflict in this circuit, we submitted this issue for an en banc vote, and this circuit voted en banc to follow *Legett* and *Hall.* Following those cases, we remand this case to the trial court for the imposition of the mandatory fine.

This court has consistently cited *Williams* in support of its opinions remanding cases to district courts for the imposition of mandatory fines required by statute. *See e.g., State v. Vidrine,* 19-0906, p. 22 (La. App. 4 Cir. 4/15/20), 298 So.3d 781, 794; *State v. Copelin,* 16-0264, p. 4 (La. App. 4 Cir. 12/7/16), 206 So.3d 990, 994. In addition, this court recently reversed a district court ruling finding that the imposition of the mandatory fine violated due process. *See State v. Travis,* 18-0645, pp. 7-9 (La. App. 4 Cir. 2/13/19), 265 So.3d 854, 859-60.[1]

Nevertheless, we are constrained to follow the Fourth Circuit's prior jurisprudence directing that we remand for correction of the defendant's sentence where the trial court has failed to impose a statutorily mandated fine. *See State v. Lawson,* 20-00032, pp. 1-2 (La. 7/02/20), 297 So.3d 728, 729 (agreed-upon sentence negotiated pursuant to plea bargain should not be disturbed even if it does not include fine that would otherwise be mandated by sentencing statute).

---

[1] The practice, nonetheless, has been subject to criticism. *See generally,* Dustin C. Alonzo, Comment, *A Call to Reform Louisiana Code of Criminal Procedure Article 882: Eliminating the Error Patent Review of Illegally Lenient Fines,* 60 Loy.L.Rev. 313 (2014); *see also State v. Davis,* 15-1325, p. 10 (La.App. 4 Cir. 10/5/16), 2016 WL 5819245, at *19 (Landrieu, J., concurring) ("As a matter of policy, I do not believe that an appellate court should remand for the correction of a patent error favorable to the defendant when the defendant alone has appealed, and the State has not complained of the error. *See State v. Williams,* 00-1725, pp. 1-5 (La. 11/28/01), 800 So.2d 790, 803-05 (Calogero, C.J., dissenting).

4

In the case *sub judice*, the district court failed to impose a fine on Defendant in connection with his conviction for illegal possession of a firearm. *See* La. R.S. 14:95.1(B) (providing, in relevant part, that "[w]hoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than five nor more than twenty years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars"). Accordingly, we vacate Defendant's illegally lenient sentence for illegal possession of a firearm by a felon and remand to the district court for resentencing that complies with the statutory requirements.

## DISCUSSION

Defendant assigns two errors on appeal: (1) that the evidence is insufficient to support his convictions for second-degree murder, attempted second-degree murder, and obstruction of justice; and (2) that the jury's non-unanimous verdicts are unconstitutional.

When issues are raised on appeal contesting the sufficiency of the evidence and alleging one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. *State v. Hearold*, 603 So. 2d 731, 734 (La. 1992). As the Louisiana Supreme Court has explained, "[t]he reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981)." *Hearold*, 603 So. 2d at 734. Such an acquittal would necessarily prevent any retrial. *See State v. Gaines*, 96-1850, p. 4 (La. App. 4 Cir. 1/29/97), 688 So.2d 679, 682, *writ denied*, 97-0510 (La. 9/5/97), 700 So. 2d 503 (observing that "[a]lthough [the defendant's]

conviction must be reversed on other grounds, the issue of sufficiency of evidence must be addressed" because "if there was insufficient evidence even in the face of an error so prejudicial as to warrant a new trial, then there can be no new trial"). Thus, the Louisiana Supreme Court has held that an appellate court's failure to address the sufficiency of the evidence, when raised, is error. *See State v. Morris*, 615 So.2d 327, 328 (La. 1993) (observing that "the court of appeal erred in pretermitting relator's contention that the evidence was insufficient to prove the validity of [his] earlier convictions, which [were] an essential element of the charged crime"). Accordingly, a sufficiency of evidence analysis must precede consideration of whether a verdict must be vacated and remanded under *Ramos*. *State v. Hunter*, 19-901, p. 1 (La. App. 4 Cir. 5/27/20), --- So.3d ---, 2020 WL 2751914, *1. *See also State v. Harrell*, 19-371, p. 7 (La. App. 5 Cir. 7/8/20), 299 So. 3d 1274, 1280; *State v. Kelly,* 19-425, p. 3 (La. App. 5 Cir. 7/31/20), 299 So. 3d 1284, 1287; *State v. Littleton*, 18-354, pp. 3-4 (La. App. 5 Cir. 10/28/20), --- So.3d ---, 2020 WL 6324724, *2; *State v. Gilley*, 19-1543, p. 5 (La. App. 1 Cir. 7/17/20), --- So.3d ---, 2020 WL 4034792, *3, *reh'g denied* (8/14/20); *State v. Lynn*, 53,189, p. 14 (La. App. 2 Cir. 1/15/20), 288 So. 3d 881, 891, *writ granted*, *cause remanded*, 2020-00283 (La. 6/3/20), 296 So. 3d 1035, and *on reconsideration*, 53,189 (La. App. 2 Cir. 7/15/20), 299 So. 3d 217.

We first address the sufficiency of the evidence to support Defendant's convictions for second-degree murder and attempted second-degree murder. The

Louisiana Supreme Court has set forth the following standard of review of the sufficiency of the evidence:

> When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court "must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *State v. Neal*, 00-0674, (La. 6/29/01) 796 So.2d 649, 657 (citing *State v. Captville*, 448 So.2d 676, 678 (La. 1984)).

*State v. Brown*, 03-0897, p. 22 (La. 4/12/05), 907 So.2d 1, 18.

As relevant here, second-degree murder is "the killing of a human being . . . [w]hen the offender has a specific intent to kill or to inflict great bodily harm." La. R.S. 14:30.1(A)(1). "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended." La. R.S. 14:27(A).

As set forth above, Victim testified at trial that, on the evening of January 31, 2017, she, Decedent, and Defendant were together in a house in Orleans Parish. A disagreement arose and Defendant stated, "I should shoot y'all for playing with me." He then shot both women and, immediately left the house. This testimony was sufficient to permit a rational juror to find that Defendant murdered Decedent and attempted to murder Victim. *See State v. Marshall*, 04-3139, p. 9 (La. 11/29/06), 943 So.2d 362, 369 (citing *State v. Legrand*, 02-1462, p. 5 (La. 12/3/03), 864 So.2d 89, 94) (observing that, "[a]bsent internal contradiction or

7

irreconcilable conflict with the physical evidence, a single witness's testimony, if believed by the fact finder, is sufficient to support a factual conclusion").

Nonetheless, Defendant contends that Victim's testimony is not credible because it conflicts with the physical evidence. Defendant points out that, whereas Victim testified that Defendant fired only twice-once at each victim-the physical evidence suggests that Defendant fired three times-twice at Decedent and once at Victim. Defendant thus contends that because Victim's testimony conflicts with this physical evidence, no rational juror could have found credible the balance of her testimony. We disagree.

Even assuming, *arguendo*, that the physical evidence compelled the conclusion that three shots were fired, such evidence would not have required a rational juror to reject Victim's testimony in its entirety. "Where the testimony of a witness is impeached in part, the trier of fact has discretion to accept those portions of testimony deemed credible." *Marshall*, 04-3139, p. 7, 943 So.2d at 368 (citation omitted). A rational juror could have concluded that Victim was simply mistaken in her belief that Defendant fired only twice and still found credible the rest of her account of the shooting and her identification of Defendant as the shooter. Accordingly, the evidence is sufficient to support Defendant's convictions for second-degree murder and attempted second-degree murder.

We next address Defendant's second assignment of error that the non-unanimous verdicts are unconstitutional.

Defendant argues that the jury's non-unanimous verdicts on the charges of second-degree murder and attempted second-degree murder are unconstitutional.[2]

On April 20, 2020, in *Ramos v. Louisiana,* --- U.S. ---, 140 S.Ct. 1390, 1397, 206 L.Ed.2d 583 (2020), the United States Supreme Court held that jury verdicts in state felony trials must be unanimous. As we recently stated in *State v. Myles,* 19-0965, p.1 (La. App. 4 Cir. 4/29/20), 299 So.3d 643, 644, in a review of an assignment of error: "[b]ecause Mr. Myles' case is pending on direct review, the Court's decision in *Ramos* applies here."

Therefore, we vacate Defendant's convictions and sentences for second-degree murder and attempted second-degree murder and remand to the district court for further proceedings.

In his first assignment of error, Defendant also argues that the evidence was insufficient to support his conviction for obstruction of justice. The United States Supreme Court provided the standard for review of a claim of insufficiency of the evidence in *Jackson v. Virginia,* 443 U.S. 307, 319 (1979):

> …the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. (emphasis in original) (citation omitted).

---

[2] The verdicts for second-degree murder and attempted second-degree murder were both by a vote of 10-2

"Under the *Jackson* standard, the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court." *State v. Williams,* 11-0414 p. 18 (La. App. 4 Cir. 2/29/12), 85 So.3d 759, 771.

In *Musacchio v. United States*, the United States Supreme Court described the basic nature of the Jackson standard as follows:

> Sufficiency review essentially addresses whether 'the government's case was so lacking that it should not have even been submitted to the jury.' On sufficiency review, a reviewing court makes a limited inquiry tailored to ensure that a defendant receives the minimum that due process requires: a 'meaningful opportunity to defend' against the charge against him and a jury finding of guilt "beyond a reasonable doubt.'

136 S.Ct. 709, 715, (2016) (citations omitted).

Conflicting statements as to factual matters is a question of weight of the evidence, not sufficiency. *State v. Jones,* 537 So.2d 1244, 1249 (La. App. 4th Cir. 1989). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. *Id.* A trier of fact's determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence. *State v Vessell,* 450 So.2d 938, 943 (La. 1984); *State v. Wells*, 10-1338, p. 5 (La. App. 4 Cir. 3/30/11), 64 So.3d 303, 306. "The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction." *Wells,* 64 So.3d at 306.

La. R.S. 15:438 provides that the "rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The finder of fact must determine, from facts gleaned from direct evidence and inferred from

circumstantial evidence, considering the relative strength and weakness of each inference and finding, whether this body of preliminary facts excludes every reasonable hypothesis of innocence. *State v. Dukes,* 19-0172, p. 9 (La. App. 4 Cir. 10/2/19), 281 So.3d 745, 753; *State v. Rose,* 05-0396, p. 2 (La. App. 4 Cir. 4/13/07), 955 So.2d 270, 272. Further, in *State v. Davis,* 92-1623 p. 9 (La. 5/23/94), 637 So.2d 1012, 1020. the Louisiana Supreme Court held:

> In circumstantial evidence cases, this court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. Rather, this court, evaluating the evidence in the light most favorable to the prosecution, determines whether the possible alternative hypothesis is sufficiently **reasonable** that a rational juror could not have found proof of guilt beyond a reasonable doubt under *Jackson v. Virginia.* (emphasis in original.)

"The requirement that jurors reasonably reject the hypothesis of innocence advanced by the defendant in a case of circumstantial evidence presupposes that a rational rejection of that hypothesis is based on the evidence presented, not mere speculation." *State v. Hoang,* 17-0100, p. 7 (La. 3/26/19), 282 So.3d 189, 194 (citing *State v. Schwander*, 345 So.2d 1173, 1175 (La. 1978)).

*State v. Mack*, 13-1311, pp. 9-10 (La. 5/7/14), 144 So.3d 983, 989, examined an appellate court's review of evidentiary guidelines for the jury when considering circumstantial evidence:

> A reasonable alternative hypothesis is not one "which could explain the events in an exculpatory fashion," but one that "is sufficiently reasonable that a rational juror could not 'have found proof beyond a reasonable doubt.'" Thus, in all cases, the *Jackson* standard does not provide a reviewing court with a vehicle for substituting its own appreciation of what the evidence has or has not proved for that of the fact finder. *State v. Pigford*, 05-0477, p. 6 (La.

11

2/22/06), 922 So.2d 517, 521; *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So.2d 1165, 1166 (citation omitted).

La. R.S. 14:130.1 provides that the crime of obstruction of justice, when committed with the knowledge that such act may affect a criminal proceeding, includes "[t]ampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding." This provision further states that "[t]ampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance … at the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any law enforcement investigation." La. R.S. 14:130.1. Thus, the state was required to prove beyond a reasonable doubt that Defendant intentionally altered, moved, or removed evidence from a location he had reason to know would be the subject of investigation, with the specific intent of distorting the investigation's results.

"Specific intent" is the state of mind that exists when circumstances indicate the offender actively desires prescribed criminal consequences to follow his act. La. R.S. 14:10(1). Specific intent need not be proven as fact but may be inferred from the circumstances of the transaction and the actions of defendant. *State v. Everett,* 11-0714, p. 14 (La. 6/13/12), 96 So.3d 605, 619.

Victim testified that Defendant was in possession of a firearm at her residence, to which Defendant also admitted in his recorded statement. Victim testified that Defendant shot her and Decedent and then left the residence.

12

According to the surveillance footage taken from Victim's residence, Defendant, Decedent, and Victim were seen entering Victim's home, and then Defendant was seen leaving alone. No one else was seen entering or exiting until the first responders arrived. Det. Mathes testified that the crime lab located two of the three shell casings, but failed to locate the firearm. Accordingly, the state argues that a rational juror could conclude beyond a reasonable doubt that Defendant took the weapon with him when he left Victim's residence. The State contends that, as Defendant was aware that he shot two people with his gun, it is reasonable to assume he would know that investigators would be searching for the weapon used where the shooting occurred, and he took it with him to prevent the police from finding it.

The hypothesis of innocence Defendant sets forth in his supplemental reply brief filed with this court is that, without direct evidence that he possessed the firearm when leaving the crime scene, it is possible the weapon remained at the scene throughout the investigation but was never located.

Det. Mathes testified that the crime lab had indeed conducted a search of the crime scene and a rational juror could conclude that the murder weapon was also an object of the search. No evidence indicates that Defendant occupied any room other than the living room after the shooting, and the surveillance video did not depict Defendant discarding the firearm on the premises.[3] As Victim testified that

---

[3] Moreover, had Defendant hidden the firearm on the premises such that investigators would not have located it, he could have been found guilty of obstruction of justice by moving evidence with the intent to distort the investigation.

Defendant shot her and Decedent and left, a rational juror could conclude that Defendant took his firearm with him when he left immediately after the shooting.

Whether Defendant possessed the requisite specific intent to distort the investigation when he removed the firearm from the crime scene may be inferred from the circumstances of the transaction and Defendant's actions. In his recorded statement to police introduced at trial, Defendant admitted he had been at Victim's residence with a weapon in his possession but denied knowledge of a homicide. He told police that he left the residence, accompanied by both Victim and Decedent, to "strip" a vehicle, and then visited his girlfriend in the hospital while Victim and Decedent returned home. Defendant also suggested that the perpetrator may have been an unknown person making threatening phone calls to Decedent. All these statements were contradicted by the surveillance footage on Victim's residence showing three people (Defendant, Victim, and Decedent) exit Victim's vehicle and enter the residence and one person run from the residence shortly thereafter, followed by the arrival of the first responders.

Accordingly, we find that Defendant possessed the specific intent to distort the results of the investigation at least at the time he attempted to deceive Det. Mathes regarding his whereabouts and his involvement in the shootings. *See State v. Duckett,* 19-0319, p. 12 (La. App. 4 Cir. 12/18/19), 288 So.3d 167, 175-76 ("Additionally, evidence presented at trial showed that Defendant attempted to obstruct the police investigation of the crimes by lying about his relationship with

Ms. Wright and attempting to assign blame for the crime to someone who was in jail at the time of the shooting.").

Defendant's sole defense, as evidenced in his statement to police and by attempting to impeach Victim's testimony at trial, was that he was at the scene but left before the shooting. He also admitted to police that he had a firearm on his person. In order to support his defense that he did not commit the shooting, Defendant had to remove the firearm from the scene. Nothing entered into evidence suggests that Defendant removed the firearm from the crime scene for any other reason than to avoid detection as the shooter, and at no time has Defendant suggested any alternative intent on appeal. Moreover, the jury heard direct evidence of Defendant attempting to distort the results of the investigation once he was apprehended as a suspect, (a time when Defendant had the opportunity, but chose not to inform the police of the location of the murder weapon) and a rational juror could have reasonably inferred that Defendant intended no less when he removed the murder weapon from the crime scene. *See State v. Mussall,* 523 So.2d 1305, 1310 (La. 1988) ("If *rational* triers of fact can disagree as to the interpretation of the evidence, the *rational* trier's view of all of the evidence most favorable to the prosecution must be adopted.") (emphasis in original).

In *Hoang,* the defendant borrowed a neighbor's truck so a hitman could assassinate the victim and was found guilty of obstruction of justice for removing (or directing the removal) of the license plate before returning the vehicle to the

owner. 17-0100, pp. 1-2, 282 So.3d at 190-91. The defendant argued that anybody could have removed the license plate at any time, as evidenced by the owner's failure to recall the date she acquired a temporary replacement tag. Accepting that hypothesis of innocence, this court reversed defendant's conviction for obstruction of justice. *Id.,* 17-0100, pp. 2-3, 282 So.3d at 191. The Supreme Court reversed and reinstated the conviction, finding the evidence sufficient. The Supreme Court noted that the owner of the truck identified her vehicle in the surveillance video, testified she had loaned it to defendant, and thereafter noticed the license plate had been removed. The Supreme Court held that to accept the defendant's hypothesis of innocence that the license plate "went coincidentally missing at some point after the murder, would indeed be to accept an 'extraordinary coincidence' when viewed in the entirety of the state's case." *Id.,* 17-0100, p. 8, 282 So.3d at 194-95.

In *Mack*, 13-1311, p. 7, 144 So.3d at 988, the Supreme Court also refused to accept an "extraordinary coincidence" as a hypothesis of innocence and held the following:

> Dissenting, Judge Lobrano noted "what would be an extraordinary coincidence if it was not all interrelated-Ortiz Jackson's otherwise unexplained arrival on the scene within twenty minutes of the last phone call between the two cell phones and his otherwise unexplained brutal execution of the victim within that same twenty minute period." *Mack,* 12-0626 at 1 (Lobrano, J., dissenting). Unwilling to subscribe to that extraordinary coincidence, Judge Lobrano concluded that "[v]iewing all the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant communicated with Ortiz Jackson with the specific intent to procure Ortiz Jackson to shoot the victim and to kill or inflict great bodily harm upon him." *Id.*

> We agree with Judge Lobrano. Underlying the controversy between the state and defendant in the present case is the question of

16

how much deference a reviewing court in Louisiana must give to the jury's verdict in a case involving primarily or exclusively circumstantial evidence.

In the case *sub judice*, it appears that the jury rejected the idea that Defendant left his weapon behind (in a non-hidden location) after he shot Victim and Decedent, and rejected any suggestion that his removal of the firearm from the crime scene was for any other reason than to avoid detection as the shooter. This is especially true as the jurors heard direct evidence of Defendant making other deliberate attempts to thwart the investigation.

When reviewing the sufficiency of the evidence of a conviction based on circumstantial evidence, the appellate court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the reviewing court must determine whether the "alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under *Jackson*." *State v. Smith,* 06-0318, p. 5 (La. App. 4 Cir. 11/21/06), 946 So.2d 218, 221 (citing *State v. Davis,* 92-1623 (La.5/23/94), 637 So.2d 1012, 1020).

Here, Defendant states that "[t]he absence of evidence is not evidence of absence. Without evidence that appellant removed the gun from the premises, or perhaps proof that the residence was searched for that purpose meeting with negative results, the evidence of obstruction is insufficient." We reject this argument. Moreover, we find no evidence to support a reasonable alternative hypothesis for removal of the firearm. The Louisiana Supreme Court has found

that "[w]hen the hypothesis of innocence is at least as reasonable as the hypothesis of guilt, a rational juror should have entertained a reasonable doubt as to guilt. " *See State v. Quinn*, 19-0647, 19-00730 (La. 9/9/20), --- So.3d ---, 2020 WL 5406137 (*per curiam*).

In *Quinn*, the State's only evidence regarding how the alleged victim died was introduced through the testimony of the medical examiner, who found that while the cause of death was asphyxia (lack of oxygen to the body), the manner in which the victim was deprived of oxygen could not be determined. 18-0664, p.17 (La. App. 1 Cir. 3/27/19), 275 So.3d 360, 371, *aff'd*, 19-00647, 19-00730 (La. 9/9/20); 2020 WL 5406137. The medical examiner was unable to determine if the victim's death was a murder or a suicide. *Id.* at 371-72. According to the medical examiner, there was at least equal possibility of homicide or suicide. *Quinn*, 19-00647, 19-00730 (La. 9/9/20); 2020 WL 5406137 *10 (Crichton, J., concurring). There was no evidence demonstrating that any injury of any type was inflicted upon the victim by the defendant that caused the victim's death. *Quinn*, 275 So.3d at 372. The medical examiner basically refuted the State's theory that the defendant murdered the victim by placing a plastic bag over his head, thereby depriving the victim of oxygen. *Id.* He acknowledged that it was possible for the victim to have killed himself in that way, but in a murder situation, the victim of such an attack would have time to react and struggle and would probably have defensive wounds on his body, which the victim did not. *Id.* Additionally, evidence was presented to the jury indicating that the death may have been a suicide,

18

including the defendant's hearsay statement to his girlfriend, made shortly after the two returned to the defendant's apartment which he shared with the victim and the defendant discovered the victim's dead body outside of the presence his girlfriend, that the victim had killed himself; the defendant's ex-wife's testimony that the victim liked to drink a lot, that he was "manic," and that he had made Facebook posts saying that he was going to end his life; and text messages sent by the victim to the defendant on the day of the victim's death, in which the victim wrote: "I cant do this anymore im finished done... Ill take care of myself the one way I know how. … You have a very small window and then im gone." *Id.*

In the case *sub judice*, however, Defendant puts forth no hypothesis of innocence to counter the State's argument that he obstructed justice by removing the firearm with the specific intent to distort the police investigation. In particular, Defendant did not offer any circumstantial or direct evidence that he removed the firearm from the crime scene because he could not part with his firearm under any circumstances.[4]

---

[4] Moreover, Defendant did not raise this hypothesis of innocence on appeal or even argue that the evidence was insufficient to prove that he removed the firearm from the crime scene with the requisite specific intent to distort the results of the police investigation. Although Defendant raised as an assignment of error in his original brief the insufficiency of the evidence to support the convictions of second degree murder, attempted second degree murder, and obstruction of justice, his argument on this assignment of error was limited strictly to his claim that the evidence was insufficient to prove that he was the shooter; he made no argument as to the sufficiency of evidence of specific intent. After this court directed the parties to file supplemental briefs to specifically address the sufficiency of evidence as to the obstruction of justice conviction, Defendant did not argue that the evidence was insufficient to prove that he acted with the specific intent of distorting the results of the police investigation. Instead, the supplemental reply brief filed on behalf of Defendant asserted that the evidence was insufficient to prove that he removed the firearm from the crime scene. Pursuant to Uniform Rules, Courts of Appeal, Rule 2-12.4(B)(4), "[a]ll assignments of error and issues for review must be briefed [, and the] court may consider as abandoned any assignment of error or issue for review which has not been briefed." In the present case, Defendant failed to brief the issue of sufficiency of evidence as to the element of specific intent on the obstruction of justice conviction, and thus, abandoned the issue. *See* Uniform Rules, Courts of Appeal, Rule 2-12.4(B)(4); *State v. Foy,* 439 So.2d 433, 435

The "comparative reasonableness of the hypotheses of innocence and guilt" in *State v. Quinn*, *supra*, was markedly different from that in the case *sub judice*. Defendant failed to submit evidence to support the hypothesis that Defendant shot the victims to "avoid relinquishing his firearm" in satisfaction of his bet with the victims or that he took the firearm with him because "he simply refused to part with his firearm under any circumstances." Victim testified that Defendant became agitated after losing the bet and "started fussing and kept talking about it." According to Victim, Defendant eventually got up to leave and told the victims, "I should shoot y'all for playing with me," and proceeded to shoot the victims. There was no evidence that either of the victims asked that Defendant "pay off" the bet, *i.e.*, turn over his gun to them, or that satisfaction of the bet was even discussed at all. A fair interpretation of Victim's testimony is that Defendant was "agitated" about losing the bet and became even more "agitated" as he "fussed" with the victims and the "fussing" escalated to the point where Defendant shot the victims. Victim's testimony suggests that Defendant was upset about being wrong about the aspect of the movie on which the bet was premised, not about having to pay the bet. In fact, according to Victim's testimony, after Defendant "started fussing and kept talking about it," Victim stated she was going to leave the residence because she "[didn't] have time to be going back and forth with [him]," at which time

---

n. 1 (La.1983); *Bell v. Dep't of Police*, 13-1529, pp. 6-7 n. 4 (La. App. 4 Cir. 5/21/14), 141 So.3d 871, 875; *Maldonado–Mejia v. Eversound Kitchen & Bath, LLC*, 15-0859, p. 5 (La.App. 4 Cir. 4/20/16), 194 So.3d 1136, 1139, *writ denied*, 16-0963 (La. 9/6/16), 205 So.3d 914; *State v. Alridge*, 17-0231, p. 36 n. 21 (La.App. 4 Cir. 5/23/18), 249 So. 3d 260, 286, *writ denied*, 18-1046 (La. 1/8/19), 259 So. 3d 1021, and *cert. granted, judgment vacated*, 140 S. Ct. 2710, 206 L. Ed. 2d 848 (2020).

Defendant responded that he would leave instead. Defendant could have left the residence with his firearm without incident, but instead, he told the victims he should shoot them "for playing with him," and after Decedent jumped up and started walking towards him, shot her and then shot Victim. Simply put, there was no evidence that Defendant was concerned or had reason to be concerned about having to part with his gun, other than the fact that he had lost the bet.

A rational juror could have concluded that Defendant was not threatened with the prospect of losing his firearm and did not shoot the victims and subsequently leave the scene with the gun in order to maintain possession of the gun. Defendant put forth no hypothesis of innocence equivalent to the hypothesis of guilt advanced by the state. Thus, viewing the evidence in a light most favorable to the prosecution, a rational juror could have found that Defendant removed the murder weapon from the crime scene with the intent to avoid detection as the shooter in a subsequent criminal investigation. Thus, we find the evidence sufficient to sustain the conviction of obstruction of justice.

Based on the foregoing, we vacate the convictions and sentences for second-degree murder and attempted second-degree murder; affirm the conviction for obstruction of justice**;** vacate the sentence for illegal possession of firearm; and remand to the district court for further proceedings consistent with this opinion.

**CONVICTIONS AND SENTENCES FOR SECOND-DEGREE MURDER AND ATTEMPTED SECOND-DEGREE MURDER VACATED; CONVICTION FOR OBSTRUCTION OF JUSTICE AFFIRMED; SENTENCE FOR ILLEGAL POSSESSION OF FIREARM VACATED; REMANDED.**

21