778 So.2d 1127 (2001)
STATE of Louisiana
v.
Wendel PROFIT.
No. 2000-KK-1174.
Supreme Court of Louisiana.
January 29, 2001.
*1128 Richard P. Ieyoub, Attorney General, Harry F. Connick, District Attorney, Lionel Burns, Jr., Jeffrey W. Davidson, Assistant District Attorneys, Counsel for Applicant.
Jason R. Williams, New Orleans, Counsel for Respondent.
PER CURIAM:[*]
Probable cause to arrest does not invariably give rise to probable cause to search because "[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific `things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 556, 98 S.Ct. 1970, 1976-77, 56 L.Ed.2d 525 (1978). In the present case, the trial court and court of appeal agreed that notwithstanding probable cause to arrest respondent and his passenger after a brief chase in which the passenger threw a bag containing three pounds of marijuana out of the window of respondent's car, the police had no reasonable basis for believing that they would probably find additional amounts of marijuana in respondent's residence. Both courts concluded that the police therefore lacked probable cause to obtain a warrant to search the premises. We granted the state's application and now reverse the rulings below because in the present case, as in many cases, see, e.g., State v. Varnado, 95-3127, pp. 2-3 (5/31/96), 675 So.2d 268, 270, the police and issuing magistrate could reasonably assume that the fruits and instrumentalities of the offense were probably stored in the suspect's home.
The events leading to the arrest of respondent and the search of his home began with a tip placed to the police hotline on the night of March 16, 1999, that two suspicious persons occupying a black Maxima appeared to be "casing" the Winn Dixie Supermarket located at Almonaster and Prieur streets in New Orleans. Officer Dan Anderson responded within minutes to a dispatched report of the tip, and as he turned into the parking lot of the Winn Dixie, the informant, who immediately recognized the police presence from the blue light on Anderson's unmarked car, approached the officer with additional information that one of the men might be armed. The officer spotted a black Maxima occupied by two men leaving the parking lot, and he pulled in behind the vehicle to conduct a mobile surveillance coordinated with at least two other police units in the vicinity. When the officers on the scene received a second dispatch report that the black Maxima matched the description of a vehicle used by a murder suspect they attempted an investigatory stop by establishing a roadblock on Almonaster. In response to the flashing lights and siren of a marked patrol unit, the Maxima accelerated, struck one of the police units a glancing blow, and sped away. Anderson got behind the vehicle and observed its passenger throw a bag out of the window of the speeding Maxima as the chase continued. The Maxima eventually came to a stop after crashing into a curb and blowing out two of its tires. The police recovered the bag and determined that it contained approximately three pounds of marijuana.
According to the warrant application, after the officers placed him under arrest, respondent gave the police an address on St. Marie Street as his residence. However, *1129 his passenger stated the respondent actually lived at 4601 St. Bernard Avenue and the officers confirmed that information when they inspected respondent's driver's license. A computer check on respondent's background then revealed two arrests for possession of marijuana, the second leading to a conviction for which respondent was still on probation at the time of his arrest in the present case. On the basis of the marijuana retrieved after the chase, and of what the officers viewed as an attempt by respondent to conceal the place of his residence, the police applied for and obtained a warrant to search the premises at 4601 St. Bernard Ave. In the subsequent search, which led to the arrests of several persons on the premises, the officers retrieved additional amounts of marijuana, several firearms, and a water bill in respondent's name for 4601 St. Bernard Ave.
At the close of a two-day hearing, the trial court granted respondent's motion to suppress the marijuana retrieved from the residence on St. Bernard Avenue but denied the motion as to the marijuana in the bag abandoned during the chase. With regard to the search of respondent's residence, the court first addressed two errors made in the warrant application. The affidavit asserted that the original 911 tip concerned two African-American males who were "possibly armed and engaged in a narcotics transaction." Officer Anderson, the only witness to testify on either day of the motion hearing, gave a significantly different account of the dispatched 911 tip. The affidavit also stated erroneously that in addition to his prior drug convictions respondent had been convicted of second degree murder. In fact, respondent had been convicted of manslaughter. As to this second mistake, the trial court specifically noted that any magistrate would have recognized the mistake, as second degree murder carries a life sentence without parole, and surmised that the officer "just misunderstood what was in the computer...." At any rate, the mistake had no bearing on the issue of probable cause because the court resolved to disregard the erroneous information and "look at the remaining information and determine whether or not there's sufficient probable cause for [the search]." The court also acknowledged that, at least according to Anderson's testimony, the 911 call made no mention of a narcotics transaction. The court ultimately ruled that "there was insufficient information to justify probable cause in the search warrant."
In denying the state's application to review that determination, the court of appeal expressed some reservations about whether the trial judge "found that both errors were unintentional when there was no witness for the State to explain how the errors occurred...." State v. Profit, 99-3215, p. 9 La.App. 4th Cir. 3/27/00. The Fourth Circuit concluded that in any event the record supported the trial court's ruling because the circumstances surrounding respondent's arrest, while "demonstrat[ing] that Profit had guilty knowledge of the marijuana in the vehicle" did not appear "sufficient to make the leap to a determination that it is more probable than not that marijuana was being concealed at the residence where Profit either presently or formerly resided." Profit, 99-3215 at 10.
The record below does not fairly support an inference that the trial court found either error in the warrant application a deliberate attempt by the affiant, who was not Officer Anderson, to deceive the issuing magistrate. In these circumstances, the court applied the correct remedy. When, through inadvertence or negligence, material misrepresentations appear in a search warrant application, the proper procedure is to strike what has been misrepresented and retest the application for probable cause. State v. Byrd, 568 So.2d 554, 559 (La.1990).
The trial court faltered only in making the ultimate determination of whether the redacted warrant established probable cause for the search. Neither *1130 mistake in the warrant application had a critical impact on the probable cause showing. Far more significant than the nature of the initial 911 tip was the criminal conduct observed by the officers during the chase when respondent's passenger tossed the bag of marijuana out of the car. Without regard to the question of whether the officers had reasonable suspicion to make an investigatory stop when they precipitated the chase by turning on their lights and sirens and attempting the roadblock, the officers had clearly not seized the vehicle, nor was the stop of the vehicle imminent, at the moment the passenger discarded the marijuana after the Maxima evaded the road block and fled the scene. See California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) ("An arrest requires either physical force ... or, where that is absent, submission to the assertion of authority."); State v. Tucker, 626 So.2d 707 712 (La.1993) (adopting Hodari D. but broadening the concept of seizure as a matter of Louisiana law to include imminent actual stops). The affidavit therefore provided the magistrate with sufficient information to conclude that the seizure of the marijuana abandoned in the course of the chase was lawful and that the officers had probable cause to arrest both respondent and his passenger after they stopped themselves by crashing the Maxima in the chase which followed the unsuccessful roadblock.
Because the erroneous information in the warrant application did not implicate the core of the probable cause showing, the mistakes did not interfere with the magistrate's principal task of making "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him .... there [was] a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The task of a court reviewing that judgment is simply to "ensure that the magistrate had `a substantial basis for ... conclud[ing]' that probable cause existed." Gates, 462 U.S. at 239, 103 S.Ct. at 2332 (quoting Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). In the present case, the amount of marijuana seized after the chase, far more consistent with trafficking than with personal use only, together with a reasonable basis to believe that respondent had attempted to mislead the officers with regard to the location of his residence until he was corrected by his passenger and the information on his own driver's license, and respondent's previous involvement with marijuana reflected in his prior arrests and conviction, supported a reasonable, common sense inference made by the magistrate that the officers had a fair probability of finding additional amounts of the drug on the premises at 4601 St. Bernard Ave. See United States v. Reddrick, 90 F.3d 1276, 1281 (7th Cir.1996) (a magistrate may infer that "in the case of drug dealers evidence is likely to be found where dealers live ....") (internal quotation marks and citation omitted); United States v. Riedesel, 987 F.2d 1383, 1391 (8th Cir.1993) (lawful seizure of drugs from defendant's car provides probable cause to support issuance of a warrant to search his home); United States v. Robins, 978 F.2d 881, 892 (5th Cir.1992) (sufficient nexus existed between marijuana seized from vehicle and defendant's residence to establish probable cause for a warrant to search the premises because "[a] residence is a quite convenient, commonly-used place for planning continuing criminal activities like large-scale marijuana trafficking and money laundering."); United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986) (a magistrate is "entitled to draw reasonable inferences," including that drug dealers have drugs "where the dealers live," and when traffickers consist of ringleader and assistants a sufficient "probability exists that drugs will be at the assistants' residence as well as the ringleader's."); see also State v. Johnson, 256 Neb. 133, 589 N.W.2d 108 (1999) ("[A] common thread among these cases is that the affidavit *1131 provides factors establishing that the defendant was a drug dealer as opposed to someone in possession of drugs for personal use.").
The trial court therefore erred by second-guessing the reasonable inferences drawn by the magistrate from the circumstances in the present case. Accordingly, the decisions below are reversed and this case is remanded to the trial court for further proceedings consistent with the views expressed herein.
JUDGMENTS REVERSED; CASE REMANDED.
JOHNSON, J., dissents.
NOTES
[*] James C. Gulotta, Justice Pro Tempore, sitting for associate justice, Harry T. Lemmon.