859 So.2d 751 (2003)
STATE of Louisiana
v.
Clyde WILLIAMS and Ethel Davis.
No. 2003-KA-0302.
Court of Appeal of Louisiana, Fourth Circuit.
October 6, 2003.
*752 Eddie J. Jordan, Jr., District Attorney of Orleans Parish, Kristen Keller, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Karen G. Arena, Louisiana Appellate Project, Metairie, LA, for Defendant/Appellant, Clyde Williams.
Clyde D. Merritt, New Orleans, LA, for Defendant/Appellant, Ethel Davis.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge MICHAEL E. KIRBY, Judge EDWIN A. LOMBARD).
PATRICIA RIVET MURRAY, Judge.
The sole issue presented in this case is whether the trial court erred in denying the defendants' motion to suppress evidence seized from their residence pursuant to a search warrant. For the following reasons, we affirm.

STATEMENT OF THE CASE
On December 30, 1998, Clyde Williams and Ethel Davis were charged by bill of information with possession of cocaine in an amount four hundred grams or more, a violation of La. R.S. 40:967(F)(1)(c). At their January 19, 1999 arraignment, they pleaded not guilty. The trial court denied their motion to suppress the evidence, and this court denied their writ applications from that ruling.
On December 8, 1999, they pleaded guilty under State v. Crosby, 338 So.2d 584 (La.1976). Mr. Williams pleaded guilty to possession of cocaine in an amount more than two hundred grams but less than four hundred, a violation of La. R.S. 40:967(F)(1)(b); he was sentenced to twenty years at hard labor, without benefit of parole, probation or suspension of sentence. Ms. Davis pleaded guilty to simple possession of cocaine, a violation of La. R.S. 40:967(C)(2); she was sentenced to five years at hard labor, sentence suspended, five years active probation with special conditions. Both Mr. Williams and Ms. Davis appeal.[1]

STATEMENT OF THE FACTS
During October 1998, members of the New Orleans Police Department followed up on a confidential informant's tip that a man named "Clyde," later identified as Mr. Williams, was selling cocaine from his grocery store, the E and C Food Store, located at 7935 Forshey Street in New Orleans. The officers confirmed Mr. Williams' identity. Using the confidential informant ("CI"), the officers conducted two controlled purchases of crack cocaine from Mr. Williams at his grocery store. The officers observed Mr. Williams leaving his residence, located at 3028 Fern Street in New Orleans, near dawn carrying a brown paper bag. The officers next observed *753 him drive directly to his grocery store and engage in three or four apparent drug sales within a half-hour of his arrival at his store. Individuals would enter the store and exit a few minutes later empty-handed, carrying no food or drink.
On October 26, 1998, the officers applied for and obtained separate search warrants for the grocery store, 7935 Forshey Street, and the residence, 3028 Fern Street. Two days later, the officers simultaneously executed the search warrants. Mr. Williams was arrested at the grocery store; Ms. Davis was arrested at their residence. The cocaine they both were charged with possessing was recovered from their residence.

ERRORS PATENT
A review of the record reveals one error patent. The trial court sentenced Mr. Williams under La. R.S. 40:967(F)(1)(b) only to imprisonment. However, La. R.S. 40:967(F)(1)(b) provides that a person convicted of the offense shall be sentenced to imprisonment and shall be fined "not less than one hundred thousand dollars, nor more than three hundred fifty thousand dollars." The State neither objected to the illegally lenient sentence, nor raised the issue on appeal.
The Louisiana Supreme Court has held that an appellate court may correct an illegally lenient sentence by remanding to impose a mandatory fine. State v. Decrevel, XXXX-XXXX (La.5/16/03), 847 So.2d 1197. However, it did not say that an appellate court is required to do so. In State v. Comena, XXXX-XXXX, p. 4 (La.App. 4 Cir. 3/19/03), 843 So.2d 464, 467, and inState v. Major, XXXX-XXXX, p. 7 (La.App. 4 Cir. 10/2/02), 829 So.2d 625, 631, we declined to do so. However, a contrary holding was rendered right before Major, supra, was decided in State v. Legett, XXXX-XXXX (La. App. 4 Cir. 5/22/02), 819 So.2d 1104. In Legett, we held that the failure to impose the mandatory fine under La. R.S. 40:967 required we remand the matter for the imposition of that fine. Similarly, in State v. Hall, XXXX-XXXX, pp. 5-6 (La.App. 4 Cir. 3/19/03), 843 So.2d 488, 494, we held that "the matter must be remanded for the imposition of the fine." Id.
To resolve this conflict in this circuit, we submitted this issue for an en banc vote, and this circuit voted en banc to follow Legett and Hall. Following those cases, we remand this case to the trial court for the imposition of the mandatory fine.[2]
*754 ASSIGNMENT OF ERROR
As noted at the outset, the sole error assigned on this appeal is that the trial court erred in denying Mr. Williams' and Ms. Davis' motion to suppress the evidence seized from their residence at 3028 Fern Street. They argue that the affidavit on which the officers relied to obtain the search warrant did not set forth sufficient probable cause to support issuing a warrant for that location.
Summarizing the general rules regarding search warrants, the Louisiana Supreme Court in State v. Casey, 99-0023, pp. 3-4 (La.1/26/00), 775 So.2d 1022, 1027, stated:
The general rule is that probable cause sufficient to issue a search warrant "exists when the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched." La.C.Cr.P. art. 162; State v. Johnson, 408 So.2d 1280, 1283 (La.1982). The issuing magistrate must make a practical, common sense decision whether, given all the circumstances set forth in the affidavit, a fair probability exists that the evidence of a crime will be found in a particular place. State v. Byrd, 568 So.2d 554, 559 (La.1990). Additionally, a search warrant must establish a probable continuing nexus between the place sought to be searched and the property sought to be seized. State v. Weinberg, 364 So.2d 964, 968 (La.1978). Further, an affidavit must contain, within its four corners, the facts establishing the existence of probable cause for issuing the warrant. State v. Duncan, 420 So.2d 1105, 1108 (La.1982).
Id. The defendant bears the burden of proving that evidence pursuant to the issuance of a search warrant should be suppressed. La.C.Cr.P. art. 703(D). A trial court's factual findings on a motion to suppress the evidence are entitled to great weight and should not be disturbed unless they are clearly erroneous. Casey, 99-0023, p. 6, 775 So.2d at 1029.
Turning to the facts of the present case, the officers submitted identical three-page affidavits in support of their applications for the grocery store and the residence. Both were dated October 26, 1998, and in both Detective Donald Nides averred the following facts:
 Sometime before October 16, 1998, he spoke with a CI who informed him that a man named "Clyde" was selling crack cocaine from his business, the E and C Food Store. The CI was given twenty-five dollars and made a controlled purchase of crack cocaine from "Clyde" inside the grocery store.
*755  Several days later, the CI provided additional information, to wit: that "Clyde" drove a two-tone blue Ford Tempo, that he drove the vehicle to his business every morning, arriving at 5 a.m., that "Clyde" was usually in possession of crack cocaine when he arrived at his business, and that he would begin selling it as soon as he arrived at the business if there were customers there when he arrived.
 Detective Nides stated that he thereafter positioned himself with a view of the E and C Food Store to conduct surveillance. At approximately 5 a.m., he observed a male arrive in a twotone blue Ford Tempo and park directly in front of the store. A large man exited the car and unlocked and entered the business.
 Detective Nides checked the license plate number of the Ford Tempo, and learned it was registered to a Clyde Williams, who resided at 3028 Fern Street. He also learned that Mr. Williams had two prior felony convictions for possession of crack cocaine, and had concluded a five-year active probation period two years earlier (in October 1996).
 Detective Nides stated that on October 22, 1998, he obtained a color photograph of Mr. Williams, and he confirmed that it was the same person he had observed arrive in the Ford Tempo and enter the E and C Food Store.
 On October 23, 1998, Lieutenant Bayard established surveillance at Mr. Williams' 3028 Fern Street residence. He observed Mr. Williams exiting 3028 Fern Street at approximately 4:45 a.m. carrying a brown paper bag in his right hand. He then observed Mr. Williams drive directly to the E and C Food Store in the Ford Tempo. He then observed Mr. Williams exit the vehicle carrying the brown paper bag. As he approached the front door of his business, Mr. Williams was met by two young men who were standing in front of the store. Mr. Williams unlocked the door to the store, and the trio entered the store. Four minutes later, the two men exited, looked around, and headed up Forshey Street. Neither was carrying food or drink. At approximately 5:05 a.m., another man drove up to the store on a bicycle. He went inside, exited a few minutes later, and rode off on his bicycle. He had no food or drink in his hands. At approximately 5:16 a.m., a heavy set woman parked a pickup truck on the side of the store. The woman entered the store and exited three minutes later empty handed and drove off in the truck.
 Within seventy-two hours, inclusive, of October 26, 1998, the date the search warrant applications were prepared, Detective Nides again met with the CI. He provided the CI with fifty dollars to make another controlled purchase. The CI entered the E and C Food Store. The CI made the second controlled purchase of crack cocaine from Mr. Williams. According to the CI, Mr. Williams obtained the contraband from the register. Detective Nides stated that the contraband tested positive for crack cocaine.
The search warrant application sought to seize the following property: "[a]ll contraband controlled dangerous substances, more particularly crack/cocaine along with any concomitant physical evidence, either substantive or trace, associated with its use, possession, packaging, and/or distribution." The application concluded that: "[p]redicated on the information received and corroborated through the two controlled purchase from 7935 Forshey Street, it is [the] belief of the detective *756 that Crack/Cocaine in [sic] being secreted within the location of 7935 Forshey Street [the store] and 3028 Fern Street [the residence]."
Noting that the CI's veracity was not under attack and concluding that a reasonable person could infer from the facts set forth in the warrant that Mr. Williams was taking the cocaine from his home to his retail business where he sold it, the trial court denied the motion to suppress the evidence seized from the residence. Mr. Williams and Ms. Davis argue that the trial court erred in concluding that a magistrate could assume that drug dealers keep their narcotics in their residence, especially when, as in this case, it is alleged that the cocaine was being sold at a different location. We find this argument unpersuasive.
In determining whether a magistrate could reasonably infer from the facts set forth in the search warrant application that drugs were likely located in the seller's residence, the jurisprudence has held that "there need not be definite proof that the seller keeps his supply at his residence." 2 Wayne R. LaFave, Search and Seizure § 3.7(d)(3rd ed.1996). "[I]t will suffice if there are some additional facts, such as that the seller went to his home prior to the sale or that the sale occurred near the home, which would support the inference that the supply is probably located there." Id.
There were three such additional facts present in this case. First, the officers observed Mr. Williams leaving his residence near dawn carrying a brown paper bag, traveling directly to his store, and almost immediately commencing suspected drug sales. Second, the officers, using a CI, made two controlled buys from Mr. Williams, albeit at his business. Third, Mr. Williams had two prior drug convictions. These three facts establish a sufficient nexus between "the place sought to be searched and the property sought to be seized" as required by the jurisprudence. Casey, supra (citing Weinberg, 364 So.2d at 968). We thus hold that the trial court did not err in denying defendants' motion to suppress the evidence seized from their residence.
Our holding is supported by the Louisiana Supreme Court's recent decision in State v. Profit, XXXX-XXXX (La.1/29/01), 778 So.2d 1127. In Profit, the defendant was arrested following a police chase during which the defendant's passenger threw out a bag containing three pounds of marijuana. Although the defendant provided police with a false home address, his passenger provided police with the correct address, as confirmed by the defendant's driver's license. A computer check revealed that the defendant had been arrested twice for possession of marijuana, one arrest resulting in a conviction for which the defendant was still on probation. Police subsequently obtained a search warrant for the defendant's residence, based on his possession of the marijuana and his reporting the false address. Additional amounts of marijuana and several firearms were recovered during the execution of the search warrant.
The trial court in Profit granted the defendant's motion to suppress the evidence seized from his residence.[3] Reversing, the Supreme Court reasoned that the seizure of the three pounds of marijuana discarded from the defendant's car, defendant's apparent attempt to mislead police as to his home address, and his prior arrests *757 and conviction for possession of marijuana, taken together "supported a reasonable, common sense inference made by the magistrate that the officers had a fair probability of finding additional amounts of the drug on the premises." Profit, XXXX-XXXX, p. 6, 778 So.2d at 1130-1131 (collecting cases).[4]
As noted above, the search warrant affidavit in this case set forth facts establishing that police made a controlled purchase of crack cocaine from someone known as Clyde at Clyde's food store. Members of the New Orleans Police Department subsequently confirmed that "Clyde" was Mr. Williams, that he resided at 3028 Fern Street, and that he had two prior convictions for possession of crack cocaine and had two years earlier completed a five-year probation for one or both of those offenses. The officers subsequently observed Mr. Williams carrying a brown paper bag with him when he left his residence at 4:45 a.m. The officers then observed him drive directly to his store, which was the location at which the CI had earlier made the controlled purchase. Within one half-hour of his arrival there, Mr. Williams was observed conducting three or four separate apparent narcotics transactions inside of his store. Police subsequently made a second controlled purchase of crack cocaine from defendant Williams inside of his store. As in Profit, these facts set forth in the affidavit in the instant case support the reasonable, common sense inference made by the magistrate that the officers had a fair probability of finding crack cocaine at Mr. Williams' Fern Street residence. We thus find no error in the trial court's decision denying the motion to suppress the evidence seized from that address.

DECREE
For the foregoing reasons, Ms. Davis' conviction and sentence are affirmed. Mr. Williams' conviction is affirmed, but we remand for resentencing.
CONVICTIONS AFFIRMED, REMANDED FOR RESENTENCING.
NOTES
[1] Mr. Williams filed a motion for an appeal, which was granted. The trial court noted at Ms. Davis' June 23, 2000 post-trial appearance that the matter was on appeal; apparently Ms. Davis orally moved for an appeal. On September 30, 2002, this court granted Mr. Williams' writ application in part, ordering the trial court to appoint counsel, set a return date and file a notice of appeal. On November 8, 2002, this court granted Mr. Williams' writ application for the sole purpose of transferring it to the district court for consideration as a motion for an appeal bond.
[2] We note that the Louisiana Supreme Court's per curiam, decision in State v. Decrevel, XXXX-XXXX (La.5/16/03), 847 So.2d 1197, was a split one. In his reasons for dissenting, Justice Weimer stated:"I would grant the writ regarding whether the court of appeal can correct the fine imposed where the State has not raised that issue on appeal. See State v. Phillips, 02-0866, 02-918 (La.11/22/02), 834 So.2d 972, Chief Justice Calogero dissenting from the denial of the writ, voting to grant the writ and assigning reasons." Id. (Chief Justice Calogero adopted Justice Weimer's reasons.) In his reasons for dissenting in Phillips, supra (which Justice Weimer cited in Decrevel, supra), Chief Justice Calogero expounded his view as follows:

The majority of this court believes that these writ applications are governed by Williams. The Williams court, however, based its holding on § 301.1, which does not address sentencing restrictions other than parole, probation, or suspension of sentence. Consequently, mandatory fines continue to be governed by La.Code Cr. Proc. art. 882, which states that "an illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review," and that "a sentence may be reviewed as to its legality on the application of the defendant or of the state...." Unlike § 301.1, which is selfactivating, this court held in State v. Fraser, 484 So.2d 122 (La.1986), that article 882 requires the state to apply for appellate review of an illegally lenient sentence.
The Williams decision does not sweep broadly enough to overrule Fraser and hold that the state need not appeal the district court's failure to impose a statutorily mandated fine. The law in Louisiana regarding an appellate court's imposition of mandatory fines on its own motion continues to be governed by the Fraser court's interpretation of article 882: the state must seek appellate review of the district court's failure to impose a statutorily mandated fine. State v. Phillips, XXXX-XXXX, XXXX-XXXX, pp. 2-3 (La.11/22/02), 834 So.2d 972, 973 (Calogero, C.J., dissenting from denial of writ), cert. denied, ___ U.S. ___, 123 S.Ct. 2228, 155 L.Ed.2d 1117 (2003). See also State v. Paoli, XXXX-XXXX, p. 1 (La.App. 1 Cir. 4/11/02), 818 So.2d 795, 800-01 (Guidry, J., dissenting)(noting that while State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, arguably cast doubt on State v. Fraser, 484 So.2d 122 (La.1986), it did not overrule Fraser and expressing his view that Williams is inapplicable to sentencing errors of a type different than those subject to automatic correction under La. R.S. 15:301.1). This is a significant issue of law on which the judiciary has voiced conflicting views and which the Louisiana Supreme Court should revisit.
[3] This court denied the State's writ application in an unpublished decision. State v. Profit, unpub., 99-3215 (La.App. 4 Cir. 3/27/00).
[4] The long list of cases the Supreme Court cited in Profit is as follows:

See United States v. Reddrick, 90 F.3d 1276, 1281 (7th Cir.1996) (a magistrate may infer that" in the case of drug dealers evidence is likely to be found where dealers live ....") (internal quotation marks and citation omitted); United States v. Riedesel, 987 F.2d 1383, 1391 (8th Cir.1993) (lawful seizure of drugs from defendant's car provides probable cause to support issuance of a warrant to search his home); United States v. Robins, 978 F.2d 881, 892 (5th Cir.1992) (sufficient nexus existed between marijuana seized from vehicle and defendant's residence to establish probable cause for a warrant to search the premises because "[a] residence is a quite convenient, commonlyused place for planning continuing criminal activities like large-scale marijuana trafficking and money laundering."); United States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986) (a magistrate is" entitled to draw reasonable inferences," including that drug dealers have drugs "where the dealers live," and when traffickers consist of ringleader and assistants a sufficient" probability exists that drugs will be at the assistants' residence as well as the ringleader's."); see also State v. Johnson, 256 Neb. 133, 589 N.W.2d 108 (1999) ("[A] common thread among these cases is that the affidavit provides factors establishing that the defendant was a drug dealer as opposed to someone in possession of drugs for personal use.").
Profit, XXXX-XXXX, p. 6, 778 So.2d at 1130-1131.