STATE OF LOUISIANA      *      NO. 2024-KA-0700

VERSUS      *

     COURT OF APPEAL

BARRY BOWIE      *

     FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 552-946, SECTION "D"
Judge Kimya M. Holmes,
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Paula A. Brown)

**BELSOME, C.J., CONCURS WITH REASONS**

Holli Herrle-Castillo
LOUISIANA APPELLATE PROJECT
P. O. Box 2333
Marrero, LA 70073-2333

       COUNSEL FOR DEFENDANT/APPELLANT

Jason Rogers Williams
DISTRICT ATTORNEY, PARISH OF ORLEANS
Brad Scott
CHIEF OF APPEALS
Zachary M. Phillips
ASSISTANT DISTRICT ATTORNEY
619 S. White Street
New Orleans, LA 70119

       COUNSEL FOR THE STATE OF LOUISIANA/APPELLEE

**AFFIRMED IN PART; VACATED IN PART; REMANDED IN PART**
**July 1, 2025**

*RML*
*PAB*

This criminal appeal arises from the convictions of Barry Bowie ("Mr. Bowie") for second degree murder, felon in possession of a firearm, and obstruction of justice. Mr. Bowie appeals, contending there was insufficient evidence to sustain his convictions.

On review, we find two patent errors: (1) no compliance with the time delays for sentencing; and (2) failure to assess a fine for the felon in possession of a firearm conviction. Finding the first error regarding sentencing harmless, we find sufficient evidence was presented. As the district court failed to comply with the statutory requirement of assessing a fine for the conviction of a felon in possession of a firearm, we remand for the assessment of same. Further, we find insufficient evidence was presented to maintain Mr. Bowie's conviction for obstruction of justice. In all other respects, we affirm Mr. Bowie's convictions and sentences.

## FACTUAL BACKGROUND

Henry James ("Mr. James") and his fiancé, Sonya McClendon ("Ms. McClendon"), were visiting with each other at the apartment complex located at 1937 St. Ann Street ("apartment complex") in New Orleans where Mr. James

resided on June 7, 2021.  During the visit, Mr. James and Mr. Bowie were involved in a verbal altercation.  Because this made Ms. McClendon uneasy, she requested that Mr. James drive her to her residence in Michoud.  Upon Mr. James' return to the apartment complex, he was involved in another verbal altercation with Mr. Bowie, wherein Mr. Bowie shot Mr. James five times, killing him.

## PROCEDURAL HISTORY

Mr. Bowie was charged with one count of second degree murder in violation of La. R.S. 14:30.1; one count of being a felon in possession of a firearm in violation of La. R.S. 14:95.1; and one count of obstruction of justice in violation of La. R.S. 130.1.  He pled not guilty.  Following trial, the jury unanimously found Mr. Bowie guilty as charged.  Mr. Bowie then filed a motion for post-verdict judgment of acquittal and a motion for new trial.  The district court denied both motions.  The district court then imposed the mandatory life sentence without benefit of parole, probation, or suspension of sentence for second degree murder; twenty years imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence, on the obstruction of justice conviction; and twenty years imprisonment at hard labor, without the benefit parole, probation or suspension of sentence on the possession of a firearm by a convicted felon conviction.  All sentences were to be served concurrently and with credit for time served.

## PATENT ERRORS

The record reveals two patent errors.

First, Mr. Bowie did not explicitly waive his right to the mandated twenty-four hour delay between the denial of his motion for new trial and his sentencing.

On August 15, 2024, two months after the verdict, the district court denied

2

Mr. Bowie's motion for new trial. The district court then requested that counsel provide a date for sentencing. Instead of selecting a date for sentencing, the State presented Ms. McClendon, Mr. Bowie's fiancé, for victim impact testimony. Once her testimony concluded, the district court proceeded to sentence Mr. Bowie.

Louisiana Code of Criminal Procedure Article 873 provides:

> If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.

The "[f]ailure of the trial court to observe the mandatory twenty-four hour delay after denial of a motion for new trial, where such delay is not waived, requires the sentence to be vacated and the case remanded for resentencing." *State v. Foster*, 2002-0910, p. 3 (La. App. 4 Cir. 12/11/02), 834 So.2d 1188, 1191.

However, the Louisiana Supreme Court held that the failure of the trial court to observe the mandatory twenty-four hour rule was harmless where the sentence imposed was mandatory in nature. *State v. Seals*, 1995-0305, p. 17 (La. 11/25/96), 684 So.2d 368, 380. Morever, "[w]here a defendant does not challenge his sentence on appeal or raise the failure to observe the 24-hour delay as error, any error is harmless." *Id*. Also, "[t]his court has held that, where a defendant shows no prejudice and does not challenge his sentence on appeal, any error in failing to observe the twenty-four hour delay is considered harmless." *State v. Bentley*, 97-1552, p. 3 (La. App. 4 Cir. 10/21/98), 728 So.2d 405, 407. *See also State v. Jenkins*, 2019-1024, p. 8 (La. App. 4 Cir. 9/30/20), 365 So.3d 55, 62.

Additionally, "[a] judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect

3

substantial rights of the accused." La. C.Cr.P. art. 921. The Louisiana Supreme Court explained thusly, "[j]udicial efficiency . . . dictates that this court need not follow the useless formality of remanding for reimposition of a sentence which has not been challenged" where defendant raised no objection and demonstrated no prejudice. *State v. White*, 404 So.2d 1202, 1204 (La. 1981).

In the present matter, the following colloquy occurred between the district court judge and counsel for Mr. Bowie after sentencing:

COUNSEL:

> Judge, I have an objection to sentence at this time, we do have a couple of motions to file with respect to Mr. Bowie. One is --

THE COURT:

> Could you put the mic -- she can't here [sic] you.

COUNSEL:

> Sure, one is a Motion for Appeal and Designation of the Record —

THE COURT:

> I will grant that.

COUNSEL:

> And the other is a motion to withdraw as Counsel of Record and to appoint Appellate counsel, Judge.

THE COURT:

> I will grant that, as well.

COUNSEL:

> I have served those on the State. Judge, we also do have an Outstanding Expert Funding Motion, which you've already granted, but we need to file a motion to have the funds dispersed, which we would plan to do next week, if that's okay with the court.

4

Thus, Mr. Bowie's counsel may have objected to sentencing after the fact, but did not explicitly express same, as averred by the State. Furthermore, neither appellate counsel for Mr. Bowie nor Mr. Bowie himself raised this as an error in their respective appeal briefs.[1] As neither brief demonstrated prejudice to Mr. Bowie and we find no prejudice on the face of the record, we determine the error was harmless, which does not mandate a remand. As the Louisiana Supreme Court stated:

> A remand would only serve to lengthen unnecessarily the already substantial delays involved in this case and would in no way further the goal of achieving a fair and just decision on either verdict or sentence. It is illogical for this court to remand for the reimposition of sentence merely because there is an "error" in the minutes' lack of an affirmative waiver of the 24-hour delay. Just as non-prejudicial violations of the accused's statutory rights do not mandate reversal, an error in procedure which does not affect the fundamental fairness of the process does not necessarily require reversal and remand, unless prejudice is shown.

*White*, 404 So.2d at 1204.

Secondly, the record reveals that the sentence imposed for Mr. Bowie's conviction for felon in possession of a firearm did not comply with the requirements of the statute governing the offense.[2] In sentencing Mr. Bowie on his conviction for being a convicted felon in possession of a firearm, the district court failed to impose a fine as required by La. R.S. 14:95.1(B)(1), which states:

> B. (1) Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than five nor more than twenty years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars.

---

[1] Appellate counsel for Mr. Bowie submitted an appellant brief, and Mr. Bowie submitted a pro se supplemental brief.

[2] This finding also applies to the sentence for obstruction of justice. However, because we later vacate Mr. Bowie's conviction for obstruction of justice, this discussion is pretermitted.

Recently, in *State v. Williams*, 2024-0105, p. 4 (La. App. 4 Cir. 10/9/24), 400 So.3d 1194, 1199, this Court affirmed the defendant's conviction, but remanded the case to the district court for imposition of the mandatory fine required upon conviction for illegal possession of a firearm by a felon. This Court noted that "a reviewing court must remand cases for the imposition of a mandatory fine where the trial court failed to do so." *Id.* (citing *State v. Williams*, 2003-0302, p. 3 (La. App. 4 Cir. 10/6/03), 859 So.2d 751, 753). Consequently, this Court "concluded that our circuit is 'constrained to follow the Fourth Circuit's prior jurisprudence directing that we remand for correction of the defendant's sentence where the trial court has failed to impose a statutorily mandated fine.'" *Id.* (quoting *State v. Dorsey*, 2020-0029, pp. 4-5 (La. App. 4 Cir. 12/9/20), 312 So.3d 652, 656). Because the district court erred in failing to impose a statutorily mandated fine, the case is remanded to the district court for imposition of the mandatory fine required by law.

## TESTIMONY AND EVIDENCE

*State's Case*

*Sergeant Miles Guerreri*

Sergeant Miles Guerreri ("Sgt. Guerreri") was the homicide detective[3] for the New Orleans Police Department ("NOPD") who took over Mr. James' case after the initial lead detective left the force. He testified that they canvassed the apartment complex for witnesses following the shooting. Specifically, they identified Jasmine Brown ("Ms. Brown"), a man[4] living on the second floor with a

---

[3] Sgt. Guerreri now works with the NOPD Public Integrity Bureau.
[4] The man was identified on the second day of trial as Debayn Ghosh.

camera in his window, Chaquita Carter ("Ms. Carter"),[5] who was also known as "Badu," and Lawrence Hardester ("Mr. Hardester"). Ms. Carter did not want to go to the homicide office for fear of retaliation. The six-pack lineups shown to Ms. Brown, Ms. Carter, and Mr. Hardester were admitted into evidence for record purposes only.

Sgt. Guerreri stated that real time crime camera ("RTCC") footage was collected. He then described a series of RTCC videos played for the jury that showed the progression of Mr. Bowie riding a bicycle from the area of his residence to the apartment complex before the shooting. The RTCC footage then depicts Mr. Bowie running from the apartment complex with a firearm in his hand that he later tucks into his waistband. Not long after, he returns to the apartment complex to retrieve his bicycle and leave. The person riding the bicycle was deemed to be Mr. Bowie due to the black and gold "N.O." hat he was wearing and the COVID type face shield around his neck. Based on the evidence collected, Sgt. Guerreri filed for an arrest warrant for Mr. Bowie.

Mr. Bowie was arrested, unarmed, in at a hotel in New Orleans East. The NOPD searched the hotel room and two vehicles. No firearm was found in either the hotel room or the two vehicles.

On cross-examination, counsel for Mr. Bowie attempted to show another person was responsible for Mr. James' murder by questioning Sgt. Guerreri about a portion of the RTCC that showed a green vehicle drive up to the apartment complex after Mr. Bowie left. A woman exited the vehicle and then reentered the vehicle along with two men from the apartment complex. Counsel for Mr. Bowie also questioned Sgt. Guerreri about a white Solara turning on the street next to the

_____

[5] Ms. Carter passed away on January 3, 2024.

apartment complex. Sgt. Guerreri testified that special cameras are required to pull and run license plates, and the location was not equipped with the special camera. Sgt. Guerreri further stated that no surveillance footage was obtained from the back entrance of the apartment complex. Defense counsel then admitted a photo of the small alcove showing the mechanical room at the apartment complex where Mr. James' body was located. Counsel asked Sgt. Guerreri if he could see a small red light in the photo, implying another camera was present. Once Sgt. Guerreri confirmed he could see the light, no further questions were asked.

Sgt. Guerreri was called to the stand again on the second day of trial in order to admit video taken from the second floor resident, Debayn Ghosh.[6] The video depicted a partial view of the area where the murder occurred. Specifically, Mr. James walked to the alcove under the stairs, which was where his apartment was located. A person, dressed in black, walked down the stairs, following him. A few seconds later, people on the second-floor balcony scattered and the person dressed in black exited the complex through the driveway.

When called to the stand for rebuttal, Sgt. Guerreri testified that he met with the owner of the apartment complex who informed him that the surveillance cameras were not operational.

*Sonya McClendon*

Ms. McClendon testified that she was Mr. James' fiancé and was visiting

---

[6] The first day of trial, the district court deemed the videos from Mr. Ghosh inadmissible without his testimony for authentication. Mr. Ghosh was the first witness called on the second day of trial. He testified that on the day of the shooting he was living in a second floor apartment at the apartment complex. Mr. Ghosh had installed a security camera that was aimed outside his window facing towards the courtyard in order to keep an eye on his bicycle. Mr. Ghosh stated that officers knocked on his door and he handed over footage, though the exact manner in which he gave the NOPD his footage was unclear, i.e., by memory card, USB drive, etc. Mr. Ghosh stated this was because of the passage of time coupled with the fact that the NOPD retrieved video from him for more than one murder and other crimes. Following Mr. Ghosh's testimony, the district court deemed the videos admissible over Mr. Bowie's objection.

Mr. James at the apartment complex on June 7, 2021, when Mr. Bowie and Mr. James were involved in a verbal altercation in the middle of the apartment parking lot near their black Mercedes. Afterwards, around "5 or 6" p.m., she asked that Mr. James take her home to Michoud because she "didn't trust that guy." Ms. McClendon stated that her home was about fifteen to twenty minutes from Mr. James' apartment and that Mr. James returned to the apartment complex after dropping her off. She learned of Mr. James' death from her cousin.

### Nishia Hubbard

Nishia Hubbard ("Ms. Hubbard") resided on the second floor of the apartment complex at the time of the shooting. She lived with her boyfriend, Mr. Hardester. Prior to the shooting, Ms. Hubbard testified that Mr. Bowie knocked on her door to borrow a cigarette, which she gave him. After Mr. Bowie left, she and Mr. Hardester walked out onto the porch where they heard gunshots and another resident, Ms. Carter, known as "Badu," screaming. Ms. Hubbard did not know Mr. James, but, as she was the "candy lady," she had sold him hot plates of food in the past.

### Lawrence Hardester

Mr. Hardester testified that he resided at the apartment complex at the time of the shooting and that Ms. Hubbard was his girlfriend. Mr. Hardester saw Mr. Bowie before the shooting. He did not witness the shooting, but heard a woman screaming after the gunshots. Mr. Hardester stated he was friends with both Mr. James and Mr. Bowie. However, Mr. Hardester admitted that he was "high that day," so he did not "really" remember the day.

### Jasmine Brown

When questioned as to whether she was residing at the apartment complex at

the time of the shooting, Ms. Brown testified, "I was staying in a lot of places. I was getting loaded." Ms. Brown was asked if she was simply in the area that day and she replied, "I don't remember. I really don't know." Ms. Brown admitted that she was questioned at homicide headquarters, but claimed she did not remember anything. When counsel asked Ms. Brown if showing her the video and audio of her interview would refresh her memory, Ms. Brown insisted "it would be a waste of time. I don't remember" because she "done a lot of drugs." Ms. Brown was shown a portion of her video interview. However, she testified the video did not refresh her memory because she was unable to hear what she was saying and that she was mumbling. She did not recall if she was presented with a six pack lineup.

Ms. Brown stated she was "cool friends" with Mr. James, and knew him for two or three years. Lastly, Ms. Brown testified that her "hand was forced to be here" because of a subpoena.

### Detective Richard Daniel Nutt

Detective Richard Nutt ("Det. Nutt") testified that in 2005 he was employed as a robbery/homicide detective with the City of Arlington, Texas Police Department. He served as the lead investigator of an armed robbery wherein Mr. Bowie was developed as the suspect. Det. Nutt stated Mr. Bowie pled guilty and received fifteen years for aggravated robbery with a deadly weapon in 2006.

### State's Expert Witnesses

Dr. Erin O'Sullivan is a forensic pathologist at the Orleans Parish Coroner's Office. She was qualified as an expert in forensic pathology and testified that she performed Mr. James' autopsy. Mr. James' cause of death was multiple gunshot wounds and was classified as a homicide.

Emma Skilbred works in the Orleans Parish Communications District in the

Public Records Department as Custodian of Records. She authenticated two 911 calls relative to Mr. James' homicide. One caller stated that he heard six gun shots.

Janeice Rogers ("Ms. Rogers") was a crime scene technician with the NOPD at the time of the shooting. She took crime scene photos at the apartment complex. Ms. Rogers also identified some casings, a hat, a key fob, and other evidence collected at the scene.

Sean McElrath ("Mr. McElrath") is the section head of the Forensic Firearms Section for NOPD's Crime Lab. Mr. McElrath testified as an expert in firearm and tool mark examination. He examined six bullet specimens, but was not provided with a firearm for comparison. Mr. McElrath stated that all the casings were fired from the same weapon. However, the copper fragments and projectiles were badly damaged and did not have enough individual markings for testing.

Donald Julien, a technician for Securus, testified as the custodian of records for the jail calls and authenticated the introduction of one jail phone call. The fifteen-minute phone call to an unknown female included a statement by Mr. Bowie that he ran from the apartment complex after the shooting.

### Defense's Case

Detective April Augustine ("Det. Augustine") from the NOPD Violent Crime Abatement Investigation Team testified that a known subject gave her the name of a potential subject in Mr. James' homicide: Barry. The subject stated that "Barry" had a brother whose name sounded like "Tone." She stated that the only "Barry" she was familiar with was Barry South, who had a criminal record. Det. Augustine stated she relayed her information to the detective investigating the

shooting.

Jill Prather, an expert as it relates to firearm and tool mark identification and distance determination and scene reconstruction, testified that she visited the scene of the shooting, as well as reviewed crime scene photos and evidence logs. She observed a red light in one of the crime scene photos. Upon visiting the site approximately three months before trial, she found that the light was likely emanating from a now defunct camera.

## INSUFFICIENT EVIDENCE

Mr. Bowie's sole assignment of error, both counselled and pro se, is that insufficient evidence was presented to sustain his convictions.

The standard of appellate review for a sufficiency of the evidence claim is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). "The principal criteria of a *Jackson* . . . review is rationality." *State v. Dukes*, 2019-0172, p. 7 (La. App. 4 Cir. 10/2/19), 281 So.3d 745, 752 (citing *State v. Mussall*, 523 So.2d 1305, 1310 (La. 1988)). As such, " 'irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.'" *State v. Wilson*, 2009-0304, p. 3 (La. App. 4 Cir. 2/17/10), 68 So.3d 1031, 1033 (quoting *Mussall*, 523 So.2d at 1310).

This Court has adopted and summarized our role when reviewing claims of insufficient evidence as follows:

12

Generally, when assessing the sufficiency of evidence to support a conviction, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, a rational fact finder could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 309, 99 S.Ct. 2781, 2784, 61 L.Ed.2d 560 (1979).

A sufficiency of evidence review must include the whole record, as a rational fact finder does. *State v. Gibson*, 15-0682, p. 12 (La. App. 4 Cir. 1/27/16), 186 So.3d 772, 780. An appellate court's function is not to assess the witnesses' credibility or to reweigh the evidence. *State v. Barbain*, 15-0404, p. 8 (La. App. 4 Cir. 11/4/15), 179 So.3d 770, 776-77 (citation omitted). "[C]onflicting testimony as to factual matters is a question of weight of the evidence, not sufficiency." *State v. Rainey*, 15-0892, p. 9 (La. App. 4 Cir. 1/27/16), 189 So.3d 439, 444 (citation omitted).

*State v. Sterling*, 2024-0160, pp. 5-6 (La. App. 4 Cir. 7/17/24), 398 So.3d 80, 88.

Simply, "[a]bsent internal contradiction or irreconcilable conflict with the physical evidence, a single witness's testimony, if believed by the fact finder, is sufficient to support a factual conclusion." *State v. De Gruy*, 2016-0891, p. 11 (La. App. 4 Cir. 4/5/17), 215 So.3d 723, 729.

As to cases based on circumstantial evidence:

The standard established in *Jackson v. Virginia* is applicable to both direct and circumstantial evidence. *Dukes*, 2019-0172, p. 8, 281 So.3d at 752 (citing *State v. Wade*, 39,797, p. 7 (La. App. 2 Cir. 8/9/05), 908 So.2d 1220, 1224). When the conviction is based on circumstantial evidence, La. R.S. 15:438 sets forth the rule that "assuming every fact to be proved that the evidence tends to prove, in order to convict, [the circumstantial evidence] must exclude every reasonable hypothesis of innocence." However, La. R.S. 15:438 does not establish a stricter standard of review than the more general rational fact finder's reasonable doubt formula; rather it serves as a helpful evidentiary guide for the trier of fact when evaluating circumstantial evidence. *State v. Toups*, 2001-1875, p. 3 (La. 10/15/02), 833 So.2d 910, 912; *State v. Chism*, 436 So.2d 464, 470 (La.1983). When evaluating circumstantial evidence, the trier of fact must consider:

the circumstantial evidence in light of the direct evidence, and vice versa, [and] the trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing

13

> inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence.
>
> *State v. Rose*, 2005-0396, p. 2 (La. App. 4 Cir. 4/13/07), 955 So.2d 270, 272, citing *Chism*, 436 So.2d at 469.

*Dukes*, 2019-0172, pp. 8-9, 281 So.3d at 752-53.

### *Second Degree Murder*

Mr. Bowie contends insufficient evidence was presented to substantiate his conviction for second degree murder because "no witness identified him as the perpetrator, no physical evidence linking him to the crimes was presented, and the circumstantial evidence upon which the convictions are wholly based failed to exclude several reasonable hypotheses of innocence." Illustratively, Mr. Bowie avers that the photographic identifications made by Ms. Brown, Ms. Carter, and Mr. Hardester were insufficient to prove he killed Mr. James because the identifications only support that he was present at the apartment complex on the day of the shooting rather than identifying him as the shooter. Mr. Bowie further asserts that the crime camera videos and the video clips from Mr. Ghosh's security camera were insufficient to prove him guilty of murder because the footage did not depict him firing a weapon. Mr. Bowie reiterates that there is no video of the actual shooting.

"Second degree murder is the killing of a human being . . . [w]hen the offender has a specific intent to kill or to inflict great bodily harm." La. R.S. 14:30.1(A)(1). Additionally, "[w]hen . . . a defendant's identity as the perpetrator is at issue—as opposed to whether the crime was committed—the State bears the

burden of negating any reasonable probability of misidentification." *State v. Sandifer*, 2016-0842, p. 10 (La. App. 4 Cir. 6/27/18), 249 So.3d 142, 152.

The State maintains that the video footage provided sufficient circumstantial evidence that Mr. Bowie was the perpetrator. The footage depicts Mr. Bowie arriving at the apartment complex shortly before the shooting and running from the apartment complex immediately thereafter. Ms. McLendon, Mr. James' fiancé, testified that Mr. James and Mr. Bowie had an altercation earlier that day. Ms. Brown, Ms. Hubbard and Mr. Hardester all stated that Mr. Bowie was present at the apartment complex during the day.

While Mr. Bowie suggests that the video footage did not clearly depict him, a review of the footage demonstrates otherwise. Mr. Bowie's identity as the person riding the bicycle to the apartment complex and entering same is clear from the footage. A screenshot of the footage provides a clear image of Mr. Bowie riding the bicycle. The footage also shows him running from the complex and putting what appears to be a firearm in his pants. The jury viewed the crime camera video and security camera video and was able to discern Mr. Bowie's identity as the shooter. Thus, the jury's finding was within its province as the trier of fact. In evaluating the evidence in the light most favorable to the prosecution, we find a rational juror could have found that the State proved Mr. Bowie committed the second degree murder of Mr. James beyond a reasonable doubt.

### Felon in Possession of a Firearm

Mr. Bowie asserts the State failed to provide sufficient evidence to show that he "possessed a firearm, that he had a previous conviction for one of the requisite felonies, and that the cleansing period had not yet expired." Conversely, the State maintains that the RTCC footage depicts Mr. Bowie leaving the scene with a

firearm.

Pursuant to La. R.S. 14:95.1,[7] it is unlawful for any person who has been convicted of certain enumerated felonies to possess a firearm. For a violation of La. R.S. 14:95.1, the State must demonstrate that: "(1) defendant possessed a firearm; (2) defendant has been convicted previously of a crime of violence or other enumerated felony; (3) defendant possessed the firearm within ten years of the prior conviction; and (4) defendant had the general intent to commit the offense." *State v. Sparks*, 2018-1013, pp. 4-5 (La. App. 4 Cir. 5/8/19), 271 So.3d 308, 311. *See also State v. Bienemy*, 2023-0271, p. 6 (La. App. 4 Cir. 12/4/23), 382 So.3d 1011, 1016, *writ denied*, 2024-00050 (La. 6/19/24), 386 So.3d 673. Mr. Bowie challenges the first prong.

Det. Nutt testified that Mr. Bowie pled guilty to aggravated robbery with a deadly weapon and was sentenced, in 2006, to fifteen years in prison. *See* La. R.S.

---

[7] La. R.S. 14:95.1 provides, in pertinent part:

A. (1) It is unlawful for any person who has been convicted of, or has been found not guilty by reason of insanity for, a crime of violence as defined in R.S. 14:2(B) which is a felony or simple burglary, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime which is defined as a sex offense in R.S. 15:541, or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon. (internal footnote omitted).

\*　　　　　\*　　　　　\*

C. The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of, or who have been found not guilty by reason of insanity for, certain felonies shall not apply to any person who has not been convicted of, or who has not been found not guilty by reason of insanity for, any felony for a period of ten years from the date of completion of sentence, probation, parole, suspension of sentence, or discharge from a mental institution by a court of competent jurisdiction.

14:95.1(C). The jury in the present matter viewed the evidence and determined that the evidence proved Mr. Bowie possessed a firearm. Given the videos presented, a rational juror could have found that Mr. Bowie was convicted in 2006 of aggravated robbery with a deadly weapon and that he possessed a firearm during and after the Mr. James' homicide. Accordingly, we find the State presented sufficient evidence as required to sustain the conviction for possession of a firearm by a felon.

### *Obstruction of Justice*

Mr. Bowie contends the State failed "to prove beyond a reasonable doubt that [he] intentionally altered, moved, or removed evidence from a location he had reason to know would be the subject of investigation, with the specific intent of distorting the results of any criminal investigation." We agree.

Obstruction of justice is defined in La. R.S. 14:130.1, in pertinent part, as follows:

> A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as described in this Section:
>
> (1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:
>
> > (a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United State law enforcement officers.

"[T]he knowledge requirement in La. R.S. 14:130.1(A) is met if the perpetrator merely knows that an act 'reasonably may' affect a 'potential' or 'future' criminal

proceeding." *State v. Powell*, 2015-0218, p. 11 (La. App. 4 Cir. 10/28/15), 179 So.3d 721, 728. *See also State v. Jones*, 2007-1052, p. 9 (La. 6/3/08), 983 So.2d 95, 101. "The defendant must also have tampered with evidence 'with the specific intent of distorting the results' of a criminal investigation." *Powell*, 2015-0218, p. 11, 179 So.3d at 728 (quoting La. R.S. 14:130.1(A)(1)). However, "[n]othing beyond 'movement' of the evidence is required by the statute if accompanied by the requisite intent and knowledge." *Id.* (citing *Jones*, 2007-1052, p. 10, 983 So.2d at 101).

In *State v. White*, 2024-0385, p. 12 (La. App. 4 Cir. 5/14/25), ___ So. 3d ___, ___, 2025 WL 1415587, at *23, this Court stated:

> "'Specific intent' is the state of mind that exists when circumstances indicate the offender actively desired prescribed criminal consequences to follow his act." *State v. Scott*, 2023-0022, p. 15 (La. App. 4 Cir. 8/30/23), 372 So.3d 42, 54, *writ denied*, 2023-01317 (La. 3/19/24), 381 So.3d 707, and *writ denied*, 2023-01318 (La. 3/19/24), 381 So.3d 707 (quoting La. R.S. 14:10(1)). Further, "'[s]pecific intent [to commit obstruction of justice] need not be proven as fact but may be inferred from the circumstances of the transaction and the actions of defendant.'" *Id.* (quoting *State v. Harvey*, 2021-0730, p. 10 (La. App. 4 Cir. 5/25/22), 345 So.3d 1043, 1050.
>
> \*　　　　　　\*　　　　　　\*
>
> However, more than the mere removal of evidence from a crime scene is required to support a conviction for obstruction of justice; "the State must also prove that such removal was done with 'the specific intent of distorting the results of any criminal investigation or proceeding that may reasonably prove relevant to a criminal investigation or proceeding.'" *Scott*, 2023-0022, p. 15, 372 So.3d at 54. While specific intent may be inferred from a defendant's actions, this Court has held that the act of removing a firearm from a crime scene, without more, is insufficient "to prove beyond a reasonable doubt that [the defendant] possessed the specific intent to distort the police investigation." *Id.*, 2023-0022, p. 16, 372 So.3d at 55.
>
> In *Scott*, 2023-0022, p. 16, 372 So.3d at 55, the record reflected that the video evidence depicted "[the defendant] fleeing the scene, yet there is no footage of Defendant leaving the rifle at the scene."

This Court stated there was no corroborating evidence that defendant intended to distort an investigation, opining:

> The hypothesis that Defendant had the specific intent to distort the results of the police investigation when he left the crime scene is contradicted by the fact that he left behind shell casings (instead of collecting the shell casings ejected from his rifle), video surveillance (instead of destroying the video surveillance that documented his presence in the neighborhood shooting at the SUV), and witnesses (instead of harming the witnesses that were outside on the street at the time of the shooting incident). From this evidence, a rational juror could have inferred that, in taking the firearm with him, Defendant gave no thought to interfering with the results of a criminal investigation or proceeding.

*Id.*, 2023-0022, pp. 16-17, 372 So.3d at 55. As such, this Court vacated defendant's conviction for obstruction of justice. *Id.*, 2023-0022, p. 17, 372 So.3d at 55.

After *Scott*, this Court re-examined the issue in *State v. Alexander*, 2023-0540, p. 17 (La. App. 4 Cir. 4/23/24), 401 So.3d 105, 115-16, *writ denied*, 2024-00665 (La. 12/11/24), 396 So.3d 968, wherein the defendant deleted the record of a single phone call from his phone, in addition to removing the murder weapon from the scene, which would have revealed that he called a taxi cab "requesting to be transported to the area [of the crime scene shortly before] the murder occurred." This Court found that the totality of defendant's actions indicated his specific intent to destroy evidence of his presence at the crime scene, notwithstanding his admission to detectives that he called the taxi during subsequent questioning. *Id.*, 2023-0540, pp. 17-18, 401 So.3d at 116.

Applying these precepts, in *White*, this Court found the State failed to establish that the defendant intended to obstruct justice. 2024-0385, p. 13, ___ So.3d at ___, 2025 WL 1415587, at*25. In *White*, the defendant "left numerous witnesses at the scene unharmed, he did not attempt to obscure cameras, and he did not attempt to collect any projectiles." *Id.* Based on these circumstances this Court opined "this case does not reflect any additional action by [defendant] to impede or distort the investigation aside from his apparent removal of the firearm he brandished from the scene of the shooting." *Id.*

As in *White*, Mr. Bowie made no attempts to obscure cameras, collect projectiles, or harm witnesses. Other than allegedly absconding with the murder weapon, the State failed to show Mr. Bowie intended to "impede or distort" the investigation. Accordingly, we find the State's evidence of Mr. Bowie's intent lacking. Therefore, we vacate Mr. Bowie's conviction and sentence for obstruction of justice.

## DECREE

For the above-mentioned reasons, we remand Mr. Bowie's sentence for being a felon in possession of a firearm for the imposition of the mandatory fine. We vacate Mr. Bowie's conviction for obstruction of justice. In all other respects, Mr. Bowie's convictions and sentences are affirmed.

**AFFIRMED IN PART; VACATED IN PART; REMANDED IN PART**